123 P.3d 88 (2005)
155 Wash.2d 790
Patrick J. SHEEHAN and James T. Reynolds, on behalf of themselves and all others similarly situated, Appellants,
v.
CENTRAL PUGET SOUND REGIONAL TRANSIT AUTHORITY, a Washington municipal corporation, Seattle Popular Monorail Authority, a Washington municipal corporation, and State of Washington, Respondents.
No. 76036-5.
Supreme Court of Washington, En Banc.
Argued May 19, 2005.
Decided November 10, 2005.
*90 James Alexander Smith, James R. Hennessey, Jeffrey Walton Thomas, Smith & Hennessey PLLC, Jeffrey Walton Thomas, Thomas Law Offices, Seattle, for Appellants.
Paul J. Lawrence, Matthew J. Segal, Sarah Christine Johnson, Preston Gates & Ellis LLP, Ross Andrew Macfarlane, Seattle Monorail Project, Seattle, Cameron Gordon Comfort, Donald F. Cofer, Attorney General's Office, Revenue Division, Olympia, Desmond Leoron Brown, Sound Transit Union Station, Seattle, Jerald R. Anderson, Attorney General's Office, Olympia, for Respondents.
Hugh David Spitzer, Foster Pepper & Shefelman PLLC, Seattle, Amicus Curiae on behalf of Association of Washington Cities and Washington State Transit Association.
Henry M. Aronson, Norman J. Bruns, Camden Michael Hall, Camden Hall PLLC, William Colwell Severson, Seattle, Amicus Curiae on behalf of A.H. Larson, Terrance Scott Wean, Lisa G. Olsen, John Speirs, Kenneth H. Torp, Arthur L. Wahl, B.L. Fox, Peter H. Nickerson.
OWENS, J.
¶ 1 Patrick Sheehan and James Reynolds (Appellants) seek reversal of the trial court's decision to dismiss, upon motion for summary judgment, all of their claims challenging the motor vehicle excise taxes (MVET) levied and collected by respondents Central Puget Sound Regional Transit Authority (Sound Transit) and Seattle Popular Monorail Authority (the Monorail) (collectively, the Authorities). Appellants also assign error to the trial court's decision to defer a ruling on their CR 23 motion for class certification until final disposition of the parties' cross motions for summary judgment. We hold that, contrary to the myriad arguments offered by Appellants, the taxes imposed by the Authorities are not illegal and that the trial court did not err in denying their motion for class certification on the basis that the motion was moot. We, therefore, affirm the trial court in all respects.

FACTS
¶ 2 There is no dispute as to the underlying facts of this case. A background description of the MVET collected by Sound Transit and the Monorail is provided below.

1. The Sound Transit Tax
¶ 3 Sound Transit was formed in 1993 pursuant to enabling legislation that authorized counties in the Puget Sound region to create transit authorities for the financing and operation of regional transit systems. See generally ch. 81.104 RCW; ch. 81.112 RCW. Pursuant to this legislation, King, Pierce, and Snohomish Counties voted to establish Sound Transit to provide mass transportation services within a defined geographical district (Sound Transit District). To fund such services, RCW 81.104.140 authorizes a regional transit authority, such as Sound Transit, to collect revenue from several funding sources, including an excise tax on motor vehicles. Specifically, former RCW 81.104.160(1) (1998)[1] permitted regional transit authorities to
submit an authorizing proposition to the voters, and if approved, [to] levy and collect an excise tax, at a rate approved by the voters, but not exceeding eighty one-hundredths of one percent on the value, under chapter 82.44 RCW, of every motor vehicle owned by a resident of the taxing district, solely for the purpose of providing high capacity transportation service.
The legislature authorized Sound Transit to contract with appropriate agencies "for administration *91 ... of any tax authorized by ... [RCW] 81.104.160." RCW 81.104.190.
¶ 4 In November 1996, voters in the Sound Transit District approved a regional mass transportation plan, as well as a local MVET of 0.3 percent of the value of motor vehicles licensed within the Sound Transit District. Sound Transit's MVET was passed "to provide the local share of funding towards the $3.9 billion estimated cost of the system." Clerk's Papers (CP) at 251. Using its authority under RCW 81.104.190 to contract with state agencies for tax administration, Sound Transit reached an agreement with the Washington Department of Licensing (DOL) for the collection of its MVET.

2. The Monorail Tax
¶ 5 The Monorail was formed in 2002 pursuant to enabling legislation authorizing the creation of transportation authorities that are charged with building, owning, operating, and maintaining a monorail system. See generally ch. 35.95A RCW. The Monorail may, with voter approval, "levy and collect a special excise tax not exceeding two and one-half percent on the value of every motor vehicle owned by a resident of the authority area for the privilege of using a motor vehicle." RCW 35.95A.080(1), (5). This special excise tax "will be collected at the same time and in the same manner as relicensing tab fees under RCW 46.16.0621 and 35.95A.090." RCW 35.95A.130. "Valuation of motor vehicles for purposes of the special excise tax ... must be consistent with chapter 82.44 RCW." Id. (referencing the State's former MVET, repealed by I-776; see supra note 1).
¶ 6 In 2002, Seattle voters approved a measure providing for "an annual special excise tax not to exceed 1.4% on the value of every motor vehicle owned by a Seattle resident." CP at 42, 148. The Monorail thereafter pledged proceeds from the Monorail MVET to the long-term debt it issued to finance construction of the "Green Line" project from Ballard to West Seattle. Unlike Sound Transit's enabling legislation, the Monorail legislation specifically provides that DOL shall quarterly "remit special excise taxes collected on behalf of an authority, back to the authority, at no cost to the authority." RCW 35.95A.130.

3. Procedural History
¶ 7 Appellants are motor vehicle owners who reside within one or both of the Authorities' boundaries and have paid one or both of the vehicle taxes. In March 2004, Appellants filed a complaint in King County Superior Court alleging that both vehicle taxes were unconstitutional and statutorily unauthorized. Soon thereafter, Appellants moved for certification of a class of similarly situated taxpayers pursuant to CR 23. The Authorities opposed certification, arguing that consideration of the motion should be stayed pending the resolution of the Authorities' motion for summary judgment, which they filed simultaneously with their opposition to the class certification. Appellants subsequently filed a cross motion for summary judgment.
¶ 8 After oral argument regarding class certification, the trial court reserved its ruling on that issue pending a resolution of the parties' cross motions for summary judgment. The trial court then heard argument on the summary judgment motions, granted the Authorities' summary judgment motion, denied Appellants' summary judgment motion, dismissed all claims against the Authorities, and denied the pending class certification motion as moot. Appellants sought, and we granted, direct review in this court.[2]

ISSUES
¶ 9 1. Are the taxes imposed by the Authorities illegal under article VII, section 5 of the Washington State Constitution because (a) there is no provision for the taxing events in the enabling legislation, (b) they are invalid excise taxes, (c) they are collected annually, or (d) they are invalid licensing taxes?
*92 ¶ 10 2. Are the taxes imposed by the Authorities illegal because they are preempted under RCW 46.08.010?
¶ 11 3. Are the taxes imposed by the Authorities actually property taxes, prohibited by RCW 82.44.130 and RCW 84.36.595(2)?
¶ 12 4. Did the trial court abuse its discretion by delaying a ruling on the plaintiffs' CR 23 motion for class certification until after the cross motions for summary judgment had been decided?
¶ 13 5. Are Appellants entitled to attorney fees?

STANDARD OF REVIEW
¶ 14 At issue is the trial court's grant of summary judgment in favor of the Authorities as to Appellants' constitutional and statutory violation claims. "The standard of review of an order of summary judgment is de novo, and the appellate court performs the same inquiry as the trial court." Jones v. Allstate Ins. Co., 146 Wash.2d 291, 300, 45 P.3d 1068 (2002). Summary judgment is appropriate only if the pleadings, affidavits, depositions, and admissions on file demonstrate the absence of any genuine issues of material fact and that the moving party is entitled to judgment as a matter of law. See CR 56(c).
¶ 15 Issues pertaining to constitutional limitations on local taxation and statutory interpretation are issues of law to be determined de novo. Okeson v. City of Seattle, 150 Wash.2d 540, 548-49, 78 P.3d 1279 (2003). The aim of statutory interpretation is "to discern and implement the intent of the legislature." State v. J.P., 149 Wash.2d 444, 450, 69 P.3d 318 (2003). Where the meaning of a provision is "plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent." Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 9-10, 43 P.3d 4 (2002). A provision's plain meaning may be ascertained by an "examination of the statute in which the provision at issue is found, as well as related statutes or other provisions of the same act in which the provision is found." Id. at 10, 43 P.3d 4 (citing, inter alia, C.J.C. v. Corp. of the Catholic Bishop of Yakima, 138 Wash.2d 699, 708-09, 985 P.2d 262 (1999) (stating that "[r]elated statutory provisions are interpreted in relation to each other and all provisions harmonized")). Only when the plain, unambiguous meaning cannot be derived through such an inquiry will it be "appropriate [for a reviewing court] to resort to aids to construction." Campbell & Gwinn, 146 Wash.2d at 12, 43 P.3d 4.

ANALYSIS

1. Appellants' Constitutional Challenges to the Sound Transit and Monorail Taxes
¶ 16 Appellants suggest that four aspects of the Sound Transit and Monorail vehicle taxes are unconstitutional under article VII, section 5 of the Washington State Constitution. Article VII, section 5 states, "No tax shall be levied except in pursuance of law; and every law imposing a tax shall state distinctly the object of the same to which only it shall be applied." Appellants argue that the vehicle taxes contravene these constitutional requirements because (1) the enabling statutes do not expressly allow Sound Transit and the Monorail to tax the registration of a vehicle, (2) the vehicle taxes do not operate as valid excise taxes as provided for in the enabling legislation, (3) the enabling legislation precludes the imposition of the vehicle taxes on an annual basis, rather than as a per-vehicle cap, and (4) the vehicle taxes fail, under the second clause of article VII, section 5, to "state distinctly the object of the [tax]." We address each of these constitutional arguments in turn.

a. Taxing the Registration of a Vehicle
¶ 17 Appellants first contend that the "[n]o tax shall be levied except in pursuance of law" clause of article VII, section 5 renders the Authorities' vehicle taxes unconstitutional because former RCW 81.104.160(1) and RCW 35.95A.080(1) do not expressly authorize the Authorities to tax the registration of a vehicle. Appellants rely upon (1) the absence of any variant of the terms "register" or "license" in the tax authorization statutes for either Sound Transit (former RCW 81.104.160(1)) or the Monorail (RCW 35.95A.080(1)) and (2) the express use *93 of such terms in related sections of the Authorities' enabling statutes. See, e.g., RCW 35.95A.090. As a result, Appellants reason, the legislature understood how to use vehicle registration as the taxable event but declined to do so with respect to these vehicle taxes, as evidenced by the lack of express language to the contrary.
¶ 18 The constitution allows the legislature to grant municipal authorities the power to levy and collect excise taxes for local purposes. See Const. art. XI, § 12; King County v. City of Algona, 101 Wash.2d 789, 791, 681 P.2d 1281 (1984). In this instance, the legislature granted Sound Transit the power to "levy and collect an excise tax ... of every motor vehicle owned by a resident of the taxing district." Former RCW 81.104.160(1). Similarly, the Monorail has the power to "levy and collect a special excise tax ... on the value of every motor vehicle owned by a resident of the authority area for the privilege of using a motor vehicle." RCW 35.95A.080(1).
¶ 19 Exercising the powers expressly delegated by the legislature, the Authorities have determined, with approval of the voting residents within their respective districts, that an excise tax on motor vehicles will be imposed. The Authorities have also determined that the time and place of this excise tax is the registration of a vehicle within the district. Using vehicle registration as the taxable event is not only consistent with the express grant of legislative authority in former RCW 81.104.160(1) and RCW 35.95A.080(1), but it comports fully with the legislature's decision to allow the Authorities to employ DOL, which is charged with licensing vehicles, to collect the tax. See RCW 81.104.190; RCW 35.95A.130. Contrary to Appellants' assertion, there is no basis to conclude that "register" or "license" somehow operate as indispensable words without which a local authority is precluded from using vehicle registration as the event triggering taxation on the privilege of driving. Such an exceedingly rigid view of the constitutional analysis would be antithetical to the legislature's ability to delegate its authority to tax. In sum, we conclude that the plain language of the tax authorization and collection statutes satisfy the constitutional requirement that the Authorities' use of vehicle registration as the taxable event is done "in pursuance of law." See Const. art. VII, § 5.

b. Validity as an Excise Tax
¶ 20 Appellants next suggest that the vehicle taxes in this case are unconstitutional because they do not qualify as valid excise taxes. We have previously noted that excise taxes require two conditions: First, excise taxes are imposed upon a voluntary act of the taxpayer, which affords the taxpayer the benefits of the occupation, business, or activity that triggers the taxable event. Second, excise taxes are directly imposed based upon the extent to which the taxpayer enjoys the taxable privilege. See Harbour Vill. Apartments v. City of Mukilteo, 139 Wash.2d 604, 611, 989 P.2d 542 (1999) (Talmadge, J., dissenting) (summarizing Black v. State, 67 Wash.2d 97, 99, 406 P.2d 761 (1965)). Appellants would have us hold that the Authorities' vehicle taxes fail as excise taxes because they are involuntary and calculated using an improper taxation method. The vehicle taxes are involuntary because, Appellants reason, the only available means of avoiding payment is to relinquish the beneficial use of one's property (i.e., not registering for use on public roadways). Appellants also argue that the taxes, which are calculated with reference to the value of a resident's vehicle, are not adequately based on the extent to which a resident enjoys the privilege of relicensing a vehicle for use on the public roadways in the relevant municipality.
¶ 21 The Authorities' vehicle taxes satisfy the requirement that excise taxes must be voluntary. There is no inherent requirement that residents of the taxing districts own or continue to own a motor vehicle. Certainly, many residents within the Authorities' districts do not own such vehicles. Similarly, there is no requirement that a vehicle owner drive his or her vehicle or, if a resident chooses to drive, that the resident use public roadways. A vehicle owner may, for instance, use his or her vehicle on private land without registration. See RCW 82.44.010(2)(c) (exemption for vehicles used *94 entirely on private property). Finally, since 1937, this court has held that a motor vehicle tax, measured annually upon the value of a vehicle at registration, is a valid excise tax. See State ex rel. Hansen v. Salter, 190 Wash. 703, 705-06, 70 P.2d 1056 (1937). Although the analysis provided in Hansen is sparse, the court clearly stated that the original MVET, which is nearly identical to those at issue in this case, was a valid excise tax "upon the use of personal property." Id. at 705, 70 P.2d 1056 (addressing Laws of 1937, ch. 228).
¶ 22 The Authorities' method of taxation is also consistent with the requirements of a valid excise tax. While Appellants are correct that a taxation scheme with a closer nexus between the privilege and the taxation method is conceivable,[3] they offer no persuasive argument or authority suggesting that the constitution requires such a precise fit. To the contrary, this court has, since Hansen, approved of an excise tax on the privilege of relicensing a motor vehicle that is assessed against the value of a motor vehicle. Moreover, the legislature uses the same methodology in imposing similar excise taxes. See, e.g., RCW 82.50.425(2) (excise tax on travel trailers and campers levied according to statutory depreciation schedule); RCW 82.49.010(1) (water vessels taxed as percentage of value of watercraft for privilege of using waterways). Simply put, the relationship between the legitimate decision to tax the privilege of relicensing a motor vehicle for use on public roadways and the method of using the value of a vehicle as the measure of that privilege is sufficient to avoid any constitutional infirmity.

c. Annual Collection of the Vehicle Taxes
¶ 23 Appellants next contend that the vehicle taxes violate the "[n]o tax shall be levied except in pursuance of law" clause of article VII, section 5 because the taxes may not be imposed annually. Although the argument is perfunctory,[4] Appellants seem to suggest that the legislature's decision not to use some form of the term "annual" in the excise tax enabling statutes for either Sound Transit or the Monorail can only mean that the legislature authorized a onetime per-vehicle cap. For example, former RCW 81.104.160(1) authorizes Sound Transit to "levy and collect an excise tax ... not exceeding eighty one-hundredths of one percent on the value, under chapter 82.44 RCW, of every motor vehicle owned by a resident of the taxing district." Exercising this authority, Sound Transit voters approved an MVET of 0.3 percent. Consequently, Appellants appear to conclude that Sound Transit may collect an MVET up to 0.3 percent annually but only until such taxation on a given vehicle reaches a sum total of 0.8 percent, at which point any additional taxation would violate article VII, section 5 and require a refund. In support of this argument, Appellants reference only the general principle that, when there is doubt, "taxing statutes are construed most strongly against the government and in favor of the taxpayer." Dep't of Revenue v. Hoppe, 82 Wash.2d 549, 552, 512 P.2d 1094 (1973). Unfortunately for Appellants, on this point there is no doubt.
¶ 24 We begin and end with the principle that a provision's plain meaning may be ascertained by an "examination of the statute in which the provision at issue is found, as well as related statutes or other provisions of the same act in which the provision is found." Campbell & Gwinn, 146 Wash.2d at 10, 43 P.3d 4. An examination of the authorizing legislation, former RCW 81.104.160(1) and RCW 35.95A.080(1), in conjunction with related statutes provides several reasons to conclude that the legislature authorized an annual tax on motor vehicles.
¶ 25 First, the express language of the authorizing legislation provides for "an excise tax ... of every motor vehicle," former RCW 81.104.160(1) (Sound Transit), and a "special excise tax ... on the value of every motor vehicle," RCW 35.95A.080(1) (Monorail). Since 1937, a "motor vehicle excise tax" has meant a tax on the privilege of relicensing a *95 motor vehicle for use on public roadways collected by DOL at the point of annual registration. See former RCW 82.44.020(1) (1993). While the original MVET of 1937 explicitly used the term "annual," we cannot conclude by negative implication that the legislature, approximately 60 years later, necessarily intended the Authorities' MVET to operate as a onetime cap. Instead, it seems clear that the legislature intended to adopt the long-held understanding of the meaning and operation of an MVET. See former RCW 82.44.020(1).
¶ 26 Second, the legislature provided for DOL's collection of the MVET. RCW 81.104.190; RCW 35.95A.130. DOL, in turn, has always collected the MVET annually upon the registration or relicensing of a resident's motor vehicle. Additionally, while not necessary to conclude that the legislature authorized annual taxation, we note that the Monorail tax is to be collected "at the same time and in the same manner as relicensing tab fees under RCW 46.16.0621." RCW 35.95A.130. Notably, RCW 46.16.0621(2) provides for payment annually. All of this provides further indication that the legislature both considered and intended to authorize the annual imposition of the Authorities' MVET.
¶ 27 Finally, if Appellants' contention that the Authorities are restricted to a onetime per-vehicle cap were correct, the taxes would no longer operate as a valid excise tax. As discussed above, these motor vehicle taxes operate as valid excise taxes because they are assessed upon the privilege of relicensing a motor vehicle for use on the public roadways  a privilege that is taxed annually at registration. If, as Appellants maintain, the legislature authorized taxes that are based purely on the value of a vehicle rather than the privilege of relicensing the vehicle annually, such taxes could only operate as what are known as ad valorem or property taxes. The legislature has expressly and unequivocally forbidden such taxes on motor vehicles. RCW 82.44.130 ("No motor vehicle shall be listed and assessed for ad valorem taxation so long as this chapter remains in effect"). Thus, adopting Appellants' position would require the conclusion that the legislature intended to authorize Sound Transit and the Monorail to enact taxes that are clearly illegal under a related statute. Our long-held rules of statutory interpretation preclude such logic. See, e.g., Alderwood Water Dist. v. Pope & Talbot, Inc., 62 Wash.2d 319, 321, 382 P.2d 639 (1963) (statutory interpretation should "avoid unlikely, strained or absurd consequences which could result from a literal reading").

d. Stating the Object of the Tax
¶ 28 Appellants' final constitutional argument suggests that the Authorities' implementing ordinances fail to "state distinctly the object of the [tax] to which only it shall be applied," as required under article VII, section 5. Sound Transit's ordinance implements a "motor vehicle excise tax of three-tenths of one percent" for a "regional rail and express bus system." CP at 236. Similarly, the Monorail's ordinance implements a "special excise tax not to exceed 1.4 percent on the value of every motor vehicle owned by a resident of the Authority Area for the privilege of using a motor vehicle.... to pay all or a portion of the cost of Phase I." CP at 247. Appellants argue that both the ordinances contravene the "state distinctly" requirement because they fail to reference vehicle registration or licensing. This reasoning fails in at least two ways. First, the use of the phrase "motor vehicle excise tax" adopts, by reference, the meaning that the phrase has always had  namely, an excise tax on the privilege of relicensing a vehicle for use on public roadways assessed annually at vehicle registration. Second, the "state distinctly" requirement in article VII, section 5 is directed not simply to the method of taxation but rather the relationship between the tax and the purpose of the tax. See Sheldon v. Purdy, 17 Wash. 135, 141, 49 P. 228 (1897). For example, the objects of the taxes in this case are the Ten-Year Regional Transit System Plan and Phase I of the Seattle monorail. Article VII, section 5 would render unconstitutional actions taken to divert taxes assessed for those purposes into some wholly unrelated project or fund. There is no suggestion that such a diversion has occurred or is proposed with regard to *96 either Sound Transit or the Monorail. Thus, there is no constitutional violation.

2. Preemption under RCW 46.08.010
¶ 29 Appellants contend that the Authorities' taxes are preempted under RCW 46.08.010 because they operate as licensing conditions. RCW 46.08.010 states in relevant part as follows:
State preempts licensing field. The provisions of this title relating to the certificate of ownership, certificate of license registration, vehicle license, vehicle license plates and vehicle operator's license shall be exclusive and no political subdivision of the state of Washington shall require or issue any licenses or certificates for the same or a similar purpose.
Preemption requires a showing that (1) "the legislature either expressly or by necessary implication state[d] its intention to preempt the field," or (2) "a state statute and local ordinance are in such direct conflict they cannot be reconciled." Kennedy v. City of Seattle, 94 Wash.2d 376, 383-84, 617 P.2d 713 (1980) (citation omitted). Appellants reason that the legislature intended a general preemption of vehicle license taxation because the preemption clause applies to all of Title 46 RCW and, in a separate section under that title, there is a reference to license fees and excise taxes. See RCW 46.16.210(2) ("The application must be accompanied by the payment of such license fees and excise tax as may be required by law"). Therefore, Appellants would have us hold that the Authorities' MVET could be valid only if the legislature had provided a preemption exception, which would require a specific reference to "registration" or "licensing" taxes in the enabling statutes.
¶ 30 Contrary to Appellants' interpretation of the vehicle licensing statutes, there is no preemption in this case. The Authorities have not undertaken the issuance of vehicle licenses, as prohibited by RCW 46.08.010. Instead, the Authorities have implemented a duly authorized MVET on the privilege of relicensing a vehicle for use on the public roadways. This is contemplated, not prohibited, by the reference to the "license fees and excise tax as may be required by law" in RCW 46.16.210(2). The Authorities' vehicle taxes are "required by law." Additionally, the legislature made specific provision for the Authorities to employ DOL in collecting the vehicle taxes. See RCW 81.104.190; RCW 35.95A.130. Appellants' suggestion that the legislature simultaneously authorized DOL to collect the Authorities' MVET and preempted those taxes under the vehicle licensing statute is once again adverse to our rules of statutory construction. See Alderwood Water Dist., 62 Wash.2d at 321, 382 P.2d 639 (statutory interpretation should "avoid unlikely, strained or absurd consequences").

3. Property Taxes Prohibited by RCW 82.44.130 and RCW 84.36.595(2)
¶ 31 Appellants' final substantive argument relies on the characterization of the Authorities' vehicle taxes as ad valorem or property taxes. Appellants argue that the Authorities have implemented property taxes, not excise taxes, because the assessment is calculated as a percentage of vehicle value rather than the degree to which a resident uses the public roadways. Assuming the vehicle taxes are property taxes, Appellants maintain that those taxes are invalid because they violate the two prohibitions found in RCW 82.44.130 ("[n]o motor vehicle shall be listed and assessed for ad valorem taxation") and RCW 84.36.595(2) ("[m]otor vehicles ... are exempt from property taxation"). While Appellants are correct that property taxes on motor vehicles are invalid, they are incorrect in characterizing the Authorities' vehicle taxes as property taxes.
¶ 32 In Hansen, this court directly addressed the issue of whether the State's MVET was, in operation, a property tax. 190 Wash. at 705-07, 70 P.2d 1056. The Hansen court stated "[t]hat a tax upon the use of personal property is an excise[ ] is no longer open to question in this state." Id. at 705, 70 P.2d 1056. Although both the original MVET of 1937 and the Authorities' vehicle taxes are calculated as a percentage of vehicle value, in each case the tax was or is levied upon the privilege of relicensing a vehicle for use on public roadways. Certainly, if the Authorities had imposed true property taxes, there would be no exception *97 for residents who choose to own, but not use, their motor vehicles. Once again, the mere fact that a closer nexus between the taxable activity (driving on public roadways) and the taxing event (vehicle registration) is conceivable does not require the recharacterization of such taxes as property taxes. This is the conclusion inherent in Hansen, and we decline Appellants' invitation to disregard that precedent.

4. Class Certification under CR 23
¶ 33 Appellants assign error to the trial court's denial of their motion for class certification as moot after it disposed of their substantive claims on summary judgment. A trial court's class certification decision is discretionary and will not be overturned absent a manifest abuse of discretion. Lacey Nursing Ctr., Inc. v. Dep't of Revenue, 128 Wash.2d 40, 47, 905 P.2d 338 (1995). Because we affirm the trial court's order of summary judgment in favor of the Authorities, the class certification issue continues to be moot. Although the argument is rather opaque, Appellants appear to go further in suggesting that the trial court erred in delaying its ruling on CR 23 class certification until after deciding the cross motions for summary judgment. To the extent Appellants allude to some remedy in the form of remand for consideration of their CR 23 motion, such a request is without merit. It is clear from our case law, federal cases reviewing Federal Rule of Civil Procedure 23, and statements analysis by prominent commentators, that a trial court retains discretion, for purposes of judicial economy, to delay ruling on a motion for class certification until after hearing dispositive motions. See, e.g., Wash. Educ. Ass'n v. Shelton Sch. Dist. No. 309, 93 Wash.2d 783, 789, 613 P.2d 769 (1980) ("certification of class need not always be accomplished before turning to other questions in a proposed class action"); Wright v. Schock, 742 F.2d 541, 544 (9th Cir.1984) ("It is reasonable to consider a Rule 56 motion first [prior to certification] when early resolution of a motion for summary judgment seems likely to protect both the parties and the court from needless and costly further litigation"); 5 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 23.81[2] (3d ed. 2005) ("The general rule is that pre-certification dispositive rulings are not prohibited. A district court may, in proper circumstances, rule on a dispositive motion before ruling on class certification").

5. Appellants' Request for Attorney Fees
¶ 34 Assuming a favorable outcome on one or more of their issues on appeal, Appellants request attorney fees from the two classes of beneficiaries they purport to represent. Because we affirm the trial court in all respects, no substantive issues remain and the case is dismissed. The request for attorney fees is therefore denied.

CONCLUSION
¶ 35 We hold that there is no basis for concluding that the MVET imposed by Sound Transit and the Monorail are constitutionally or statutorily prohibited. We therefore affirm the trial court's grant of summary judgment in favor of the Authorities in all respects. We also affirm the trial court's ruling that Appellants' CR 23 motion for class certification is moot.
ALEXANDER, C.J., C. JOHNSON, MADSEN, CHAMBERS, FAIRHURST, JJ., and BAKER, J.P.T., concur.
J.M. JOHNSON, dissenting.
¶ 36 I agree with only one part of the majority's analysis: precedent requires that we uphold some vehicle taxes by both Central Puget Sound Regional Transit Authority (Sound Transit)[1] and Seattle Popular Monorail Authority (Monorail) (collectively, the Authorities). I disagree, however, with the majority's conclusion that these Authorities possess statutory power to levy their respective taxes annually and ad infinitum. The majority's conclusion contradicts the plain text of each pertinent statutory scheme, neither of which authorizes or even mentions *98 an "annual" tax. That conclusion also contradicts Sound Transit's voter authorization measure which, unlike Monorail's voter measure, did not authorize "annual" exactions. The majority's stretch to uphold all taxes for these (arguably) desirable facilities has violated long-standing principles of statutory construction and our tax jurisprudence.
¶ 37 I would limit each Authority's taxing power to those taxes expressly authorized by the text of that Authority's enabling legislation and to taxes expressly allowed by ballot measures approved by the people (a step required by each statute). Tax charges not authorized by statute and the requisite voter approval should be terminated and the excess refunded. Accordingly, I dissent.
¶ 38 Our analysis begins with the text of the relevant statutes. "Our primary goal when interpreting a statute is to ascertain and give effect to the legislature's intent." Schrom v. Bd. for Volunteer Fire Fighters, 153 Wash.2d 19, 25, 100 P.3d 814 (2004) (citing Kitsap County v. Moore, 144 Wash.2d 292, 297, 26 P.3d 931 (2001); Cowiche Canyon Conservancy v. Bosley, 118 Wash.2d 801, 813, 828 P.2d 549 (1992)). Construing the statute as a whole and giving effect to every provision, we derive the intent from the text of the statute where its language is unambiguous. Schrom, 153 Wash.2d at 25, 100 P.3d 814.
¶ 39 The Sound Transit Vehicle Tax was authorized by former RCW 81.104.160(1) (1998), which was repealed by Laws of 2003, ch. 1, § 6 (Initiative Measure No. 776, approved Nov. 5, 2002, an initiative which was upheld by this court in Pierce County v. State, 150 Wash.2d 422, 78 P.3d 640 (2003)).[2] In pertinent part, the statute empowered Sound Transit to
submit an authorizing proposition to the voters, and if approved, [to] levy and collect an excise tax, at a rate approved by the voters, but not exceeding eighty one-hundredths of one percent on the value, under chapter 82.44 RCW, of every motor vehicle owned by a resident of the taxing district, solely for the purpose of providing high capacity transportation service.
Former RCW 81.104.160(1). Note that there is no reference to an annual tax.
¶ 40 The Monorail Vehicle Tax is authorized by a different statute; RCW 35.95A.080. That statute empowers the Monorail, upon voter approval, see RCW 35.95A.080(5), to "levy and collect a special excise tax not exceeding two and one-half percent on the value of every motor vehicle owned by a resident of the authority area for the privilege of using a motor vehicle." RCW 35.95A.080(1).
¶ 41 Nothing in the language of either statute suggests that the total authorized taxes are to be levied more than once on any particular vehicle, let alone annually. Our inquiry does not stop here, however. It is important to look not only at this statute but also at "all that the Legislature has said in... related statutes which disclose legislative intent about the provision in question." Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 11, 43 P.3d 4 (2002).
¶ 42 The majority looks to former RCW 82.44.020(1) (1993),[3] which authorized the now-repealed State motor vehicle excise taxes (MVET) statute, and asserts that "[s]ince 1937, a `motor vehicle excise tax' has meant a tax on the privilege of relicensing a motor vehicle for use on public roadways collected by DOL at the point of annual registration." Majority at 94-95.
¶ 43 It is true that chapter 82.44 RCW deals with "Motor Vehicle Excise Tax," the chapter title states as much. However, these Authorities (Monorail and Sound Transit) do not appear anywhere in that MVET chapter, and this phrase appears nowhere in these Authorities' enabling legislation. I fail to see how this supposed term-of-art, actually the heading of a different chapter of the *99 RCW, is applicable here. Accordingly, I will use the more accurate Vehicle Tax to describe the taxes at issue.
¶ 44 Even more relevant to my conclusion under our precedent is the fact that when Washington's legislature adopted that separate MVET, the statute expressly provided for an "annual" tax; former RCW 82.44.020(1). That earlier MVET expressly provided that "[t]he annual amount of such excise tax shall be two percent of the value of such vehicle." Id. (emphasis added). As noted, neither of these statutes had such language. Further, the only reference to chapter 82.44 RCW in either relates to the determination of value of vehicles.
¶ 45 We presume that the legislature knows the existing state of the case law in the areas in which it legislates, Price v. Kitsap Transit, 125 Wash.2d 456, 463, 886 P.2d 556 (1994). Thus, our decisions require that we recognize that these differences in statutory language are intended by the legislature and must be given meaning. Haley v. Highland, 142 Wash.2d 135, 147, 12 P.3d 119 (2000).
¶ 46 "It is well settled that where the Legislature uses certain language in one instance but different, dissimilar language in another, a difference in legislative intent is presumed." Millay v. Cam, 135 Wash.2d 193, 202, 955 P.2d 791 (1998) (citing United Parcel Serv., Inc. v. Dep't of Revenue, 102 Wash.2d 355, 362, 687 P.2d 186 (1984) (citing Seeber v. Pub. Disclosure Comm'n, 96 Wash.2d 135, 139, 634 P.2d 303 (1981) ) ).
¶ 47 The presence of the term "annual" in former RCW 82.44.020(1) stands in stark contrast to its absence in the Authorities' enabling statutes. Accordingly, the majority's assertion that "we cannot conclude by negative implication that the legislature ... necessarily intended the Authorities' MVET to operate as a onetime cap," is unpersuasive and violates our case law. Majority at 95.
¶ 48 The majority's conclusion is particularly unlikely where the purpose of each tax is a onetime capital project (as in both cases here) instead of ongoing state highway maintenance and improvements, such as financed by the MVET. The earlier MVET funded highways to be driven on by vehicle owners who paid for the improvements; it was a user fee. In contrast, those taxed here  automobile owners and drivers  derive no direct benefit from Sound Transit or the Monorail. They cannot drive cars on Monorails or Sound Transit railroad tracks. Thus the common basis of "excise," that it is a tax on use and not a property tax, does not apply.
¶ 49 Further, not only may we conclude by negative implication that the Authorities' Vehicle Tax in each statute was intended to operate as a cap on total tax rather than annual taxing, but fundamental principles of our tax jurisprudence require this conclusion:
It is elementary that the power of taxation, subject to constitutional limitations, rests solely in the legislature. Municipal corporations have no inherent power to levy taxes. Their powers are derived through legislative grant, and are strictly construed. No implications are indulged to expand the powers granted.

State ex rel. Tacoma Sch. Dist. No. 10 v. Kelly, 176 Wash. 689, 690, 30 P.2d 638 (1934) (emphasis added). Accord Covell v. City of Seattle, 127 Wash.2d 874, 879, 905 P.2d 324 (1995); Margola Assocs. v. City of Seattle, 121 Wash.2d 625, 854 P.2d 23 (1993).
¶ 50 This court has repeatedly held that "[i]f there is any doubt about a legislative grant of taxing authority to a municipality, it must be denied." Okeson v. City of Seattle, 150 Wash.2d 540, 558, 78 P.3d 1279 (2003) (emphasis added) (citing Pac. First Fed. Sav. & Loan Ass'n v. Pierce County, 27 Wash.2d 347, 353, 178 P.2d 351 (1947)). Accord Arborwood Idaho, L.L.C. v. City of Kennewick, 151 Wash.2d 359, 374-75, 89 P.3d 217 (2004); Ivy Club Investors Ltd. P'ship v. City of Kennewick, 40 Wash.App. 524, 699 P.2d 782 (1985).
¶ 51 Given the considerations above, and despite the majority's assertion to the contrary, see majority at 94-95, there is obviously serious doubt as to whether the Authorities may levy their Vehicle Tax annually. The only way to find such power here is to imply it, and our cases require us to decline to do so. We are not a legislative body.
*100 ¶ 52 The majority also contends that we may imply this power from the fact that the Department of Licensing (DOL) is authorized to collect the Authorities' Vehicle Tax. Majority at 95. This administrative procedure does not mean that the Authorities are also empowered to levy their taxes annually; it simply means that when the vehicle taxes are collected, they are to be collected at the same time a driver registers his vehicle with the DOL. The same may be said of a first-time registration when paying a use tax for a vehicle bought out of state  it is collected at registration, but not annually. More fundamentally, our jurisprudence is clear; we do not indulge implications when assessing a municipality's taxing authority.
¶ 53 Finally, the majority contends that we must construe the Authorities' enabling statutes to approve the annual levy of vehicle taxes because if we don't, they would no longer operate as valid excise taxes, but could constitute forbidden ad valorem or property taxes. Majority at 95 (citing RCW 82.44.130). This may well be true. Insofar as the Authorities' taxes are calculated with reference to a vehicle's value, they bear a strong resemblance to ad valorem or property taxes. See Harbour Village Apts. v. City of Mukilteo, 139 Wash.2d 604, 611, 989 P.2d 542 (1999) (Talmadge, J., dissenting) (summarizing our case law explaining the differences between excise and property taxes); BLACK'S LAW DICTIONARY 605, 1498 (8th ed.2004) (defining "excise tax" and "property tax" respectfully); see also 1 THOMAS M. COOLEY, THE LAW OF TAXATION §§ 39, 46, 52 (4th ed.1924). However, the majority does not purport to overrule State ex rel. Hansen v. Salter, 190 Wash. 703, 70 P.2d 1056 (1937). Presuming that it remains good law, it may control but we should analyze the taxes.
¶ 54 Salter rejected the argument that the then newly enacted State MVET in 1936 was in fact a property tax. The case still stands for the proposition that a tax based on a vehicle's value, if levied in exchange for the privilege of using that vehicle on the public roads, is a valid excise tax.[4] However, the taxes here are not directly related to use of the car, nor are they used to fund public roads.
¶ 55 The Monorail tax purports to be "for the privilege of using a motor vehicle," but the repealed Sound Transit tax was imposed on "every motor vehicle owned by a resident." RCW 35.95A.080(1) (and former RCW 81.104.160(1) quoted above). Thus the latter is most like a property tax.
¶ 56 This court's decisions hold that the distinction between excise and property tax is not whether a tax is levied once or annually. Real property taxes are imposed annually, but they are still property taxes. Excise taxes on inheritance of property or on its sale  and the use tax on cars bought out-of-state  are often onetime, rather than annual. However, they are still excise taxes.
¶ 57 Nor is the nature of the tax determined by the label, "`[t]he character of a tax is determined by its incidents, not by its name,'" Harbour Village, 139 Wash.2d at 607, 989 P.2d 542 (quoting Jensen v. Henneford, 185 Wash. 209, 217, 53 P.2d 607 (1936)). The basis for levying is not solely determinative, e.g., whether it is calculated with reference to the value of property.[5]See High Tide Seafoods v. State, 106 Wash.2d 695, 699, 725 P.2d 411 (1986) ("If a tax is imposed on the value of property, it may be a property tax." (emphasis added)); 4 THOMAS M. COOLEY, THE LAW OF TAXATION § 1676, at 3382 (4th ed. 1924) ("If a tax is in its nature an excise, it does not become a property tax merely because it is proportioned in amount to the value of the property used in connection with the occupation or act taxed.").
*101 ¶ 58 The key to identifying a property tax is whether the tax is triggered by the simple fact of property ownership, creating an "`element of absolute and unavoidable demand.'" Harbour Village, 139 Wash.2d at 611, 989 P.2d 542 (Talmadge, J., dissenting) (quoting Black v. State, 67 Wash.2d 97, 99, 406 P.2d 761 (1965)); see also Covell, 127 Wash.2d at 889, 905 P.2d 324; High Tide Seafoods, 106 Wash.2d at 699, 725 P.2d 411.
¶ 59 As construed by the majority, the taxes here may be an annual property tax on cars and thus invalid. This is an issue which we should carefully consider. The case seems strongest that the (repealed) Sound Transit tax was a property tax because the tax was imposed on "every vehicle owned by a resident," (former RCW 81.104.106(1) (emphasis added)) rather than on "the privilege of using a motor vehicle" on the public roads. RCW 35.95A.080(1). The latter (Monorail) more clearly fits the traditional incidence of an excise tax.
¶ 60 A tax is an excise where "(1) the obligation to pay ... is based upon the voluntary action of the person taxed in performing the act, enjoying the privilege, or engaging in the occupation which is the subject of the ... tax, and (2) the element of absolute and unavoidable demand is lacking." Arborwood Idaho, 151 Wash.2d at 367, 89 P.3d 217 (citing Covell, 127 Wash.2d at 889, 905 P.2d 324; High Tide Seafoods, 106 Wash.2d at 699, 725 P.2d 411; Black, 67 Wash.2d at 99, 406 P.2d 761). While it is not common, an excise tax may be calculated with reference to the value of property connected with the act, privilege, or occupation taxed. See 1 COOLEY, supra, at § 52; 4 COOLEY, supra, at § 1676. The weight tax on use of public roads by trucks is an excise tax calculated with reference to the weight capacity (which also approximately reflects the wear and tear on roads through the truck's use).
¶ 61 Here, it has not been determined whether the Authorities' taxes are triggered by the mere ownership of a vehicle. However, this appears most likely to be true of the Sound Transit tax ("of every vehicle owned by a resident"). Excise taxes are supposedly imposed in exchange for the privilege of using the vehicle on the public roads. The record here included the argument that a vehicle not registered for such use on a public road would not be subject to either Vehicle Tax. Clerk's Papers (CP) at 148-49, 152. Such taxes may be excise taxes under our cases. I would remand for this determination.
¶ 62 If the Authorities' enabling statutes truly establish ad valorem or property taxes mislabeled as "excise," we should not hesitate to say so and invalidate the taxes. Though it is true that we generally will seek to avoid interpretations that will produce illegal or unconstitutional results, "there is a difference between adopting a saving construction and rewriting legislation altogether." LAURENCE H. TRIBE, AMERICAN CONSTITUTIONAL LAW § 12-30, at 1032 (2d ed.1988), quoted in In re Parentage of C.A.M.A., 154 Wash.2d 52, 69, 109 P.3d 405 (2005). "We show greater respect for the legislature by preserving the legislature's fundamental role to rewrite the statute rather than undertaking that legislative task ourselves." In re Parentage of C.A.M.A., 154 Wash.2d at 69, 109 P.3d 405.
¶ 63 Contrary to the majority, I would follow the plain terms of the Authorities' enabling legislation and voter authorization ballot measures. I would hold that the Monorail may levy an excise tax of 2.5 percent on the value of each vehicle licensed for use on the public roads by a resident of the Monorail's taxing district.[6] I would further hold that Sound Transit could lawfully levy a one-time excise tax of 0.3 percent on the value of each vehicle licensed for use on the public roads by a resident of Sound Transit's taxing district. The absence of the word "annual" in Sound Transit's statutorily required voter authorization ballot measure further precludes it from collecting the full 0.8 percent tax authorized by statute. See CP at 251.[7] Because the statute allowed a *102 maximum 0.8 percent tax, before the repeal of the statute by initiative, voters could have authorized another onetime 0.3 percent (or 0.5, which with the first 0.3 would achieve the total 0.8 authorized).
¶ 64 Combined with the other funding sources authorized by these Authorities' enabling legislation, see RCW 35.95A.070, .090,.100; RCW 81.104.140(4), these taxes, properly construed, may provide revenue for the proposed projects. If the amount is not sufficient, the voters and/or legislature must be asked for more. This court should not make up any revenue shortfall by allowing taxation neither authorized by the legislature nor by voters.
¶ 65 I dissent.
SANDERS, J., concurs.
NOTES
[1] In 2002, Washington voters approved Initiative Measure 776 (I-776), see Laws of 2003, ch. 1, and in doing so, repealed RCW 81.104.160(1). Id. § 6. This court upheld I-776. See Pierce County v. State, 150 Wash.2d 422, 78 P.3d 640 (2003).
[2] Amici A.H. Larson, et al., move to include nonrecord material in the form of argument and transcript from separate cases. The Authorities filed an opposition brief, which we consider as a motion to strike. The motion to strike is granted, as the material in question is outside the scope of the record and irrelevant to our resolution of the issues in this case.
[3] Appellants suggest that a valid excise tax on the privilege of driving would require taxation based on mileage as determined by periodic odometer readings.
[4] Appellants afford this issue a single six-sentence paragraph in 57 pages of briefing. See Br. of Appellants at 23-24.
[1] As to Sound Transit, the Vehicle Tax statute was repealed by voters by Initiative 776, discussed infra.
[2] Statewide voters repealed the statute and this court upheld the initiative, supra. The same superior court reversed in that case has enjoined the initiative's effectiveness as to one bond contract in existence on the date of repeal. Until reversed, this requires that the proceeds be dedicated only to those preexisting bonds. Securities law will apply to sanction any diversion from that purpose.
[3] Former RCW 82.44.020(1) was codified by LAWS OF 1937, ch. 228, § 2 and was repealed by LAWS OF 2000, 1st Spec. Sess., ch. 1, § 2.
[4] The Salter court specifically characterized the former State MVET as "a tax upon the use of personal property," id. at 705, 70 P.2d 1056 (emphasis added), and concluded that it was "no longer open to question" that such a tax "is an excise." Id.; see also High Tide Seafoods v. State, 106 Wash.2d 695, 700, 725 P.2d 411 (1986). I disagree with this conclusion, and in any event, it is not applicable to both use taxes as indicated.
[5] However, article VII, sections 1 and 2 of the Washington Constitution essentially mandate that any property tax be calculated in this way.
[6] More precisely, the Monorail would be able to levy its voter-approved 1.4 percent tax, see CP at 42, until it has collected 2.5 percent of the value of such a vehicle.
[7] In pertinent part, Regional Transit Authority Proposition No. 1 provided: "To implement a regional rail and express bus system ... shall the Regional Transit Authority impose a sales and use tax of up to four-tenths of one percent and a motor vehicle excise tax of three-tenths of one percent ... ?" CP at 251.