[No. 47281-5.   En Banc.   October 1, 1981.]

ROBERT A. SEEBER, *Appellant,* v. THE PUBLIC
DISCLOSURE COMMISSION, *Respondent.*

*Robert A. Keolker* and *Robert W. Swerk,* for appellant.

*Kenneth O. Eikenberry, Attorney General,* and *James R.
Tuttle, Assistant,* for respondent.

DOLLIVER, J.—Plaintiff Robert A. Seeber is a professional
lobbyist. He is registered with the Washington State Public
Disclosure Commission (PDC), as required by RCW 42.17-
.150. As is required by RCW 42.17.170, Mr. Seeber filed
with the PDC a report of his lobbying expenditures.

In early 1979, defendant PDC began an audit of Seeber's

expenditure reports. During the course of the audit, it requested certain banking and other records which would show amounts received from those employing him to lobby, as well as customer receipts and billings for his credit card purchases. When plaintiff refused to make the records available, the PDC issued a subpoena duces tecum as authorized by RCW 42.17.370(5).

The subpoena reads in pertinent part:

Specifically you are required to bring with you writings and records as follows:

1. Banking records and all other records which show the receipt and/or deposit of monies and other items of value during or for the years 1977 and 1978 from the Council for Economic Progress, Restaurant Association of the State of Washington, Washington State Hotel Motel Association, Washington State Lodging Association, Washington Tobacco and Candy Distributors, The Proctor and Gamble Distributing Company, Washington State Consumer Finance Association, Washington Publications Distributors Association, and Washington Magazine Wholesalers Association.

. . .

4. Customer receipts and billings for American Express Company, VISA, MASTERCHARGE, or BANKAMERICARD credit card purchases during 1977 and 1978.

Plaintiff responded to the subpoena by filing a Complaint for Declaratory Judgment with the Thurston County Superior Court, asking that the court quash the subpoena. Defendant filed a counterclaim, asking that its subpoena be enforced. After hearing, the trial court granted the defendant's motion for summary judgment on its counterclaim, and ordered that the subpoena be enforced. The matter is before this court on direct review.

Although plaintiff believes the case involves a constitutional "right of privacy", we need not reach that question since we believe the issue before us is whether the PDC exceeded its authority under the public disclosure act (RCW 42.17) when it requested from Seeber his banking records and customer receipts and billings for his credit card purchases.

Plaintiff has offered to deliver all items under paragraphs 1 and 4 of the subpoena duces tecum which relate to his lobbying activities. This would include all bank records relating to those groups for which plaintiff is lobbyist and any credit card billings relating to lobbying activities. He refuses to make available, as the PDC demands under the subpoena, any other banking or credit card records. We find the PDC exceeded the authority granted to it under the public disclosure act, reverse the summary judgment below and quash paragraphs 1 and 4 of the Public Disclosure Commission's subpoena duces tecum.

As a registered lobbyist, plaintiff is required under section 17 of the act (RCW 42.17.170(2)), to report

(a) The totals of all expenditures made or incurred by such lobbyist or on behalf of such lobbyist by the lobbyist's employer during the period covered by the report, which totals shall be segregated according to financial category, including food and refreshments; living accommodations; advertising; travel; telephone; contributions; office expenses, including rent and the salaries and wages paid for staff and secretarial assistance, or the proportionate amount thereof, paid or incurred for lobbying activities; and other expenses or services . . .

. . .

(c) An itemized listing of each such expenditure in the nature of a contribution of money or of tangible or intangible personal property to any candidate, elected official, or officer or employee of any agency, or any political committee supporting or opposing any ballot proposition, or for or on behalf of any candidate, elected official, or officer or employee of any agency, or any political committee supporting or opposing any ballot proposition. All contributions made to, or for the benefit of, any candidate, elected official, or officer or employee of any agency, or any political committee supporting or opposing any ballot proposition shall be identified by date, amount, and the name of the candidate, elected official, or officer or employee of any agency, or any political committee supporting or opposing any ballot proposition receiving, or to be benefited by each such contribution.

The PDC is authorized by the act to

(4) Investigate whether properly completed statements and reports have been filed within the times required by this chapter;

(5) Upon complaint or upon its own motion, investigate and report apparent violations of this chapter to the appropriate law enforcement authorities;

RCW 42.17.360(4), (5).

To accomplish its purposes, the PDC is empowered also to

(3) Make from time to time, on its own motion, audits and field investigations;

. . .

(5) Administer oaths and affirmations, issue subpoenas, and compel attendance, take evidence and require the production of any books, papers, correspondence, memorandums, or other records which the commission deems relevant or material for the purpose of any investigation authorized under this chapter, or any other proceeding under this chapter;

RCW 42.17.370(3), (5).

Defendant derives its authority to compel the production of records from Initiative 276, a measure overwhelmingly approved by the voters of Washington in the November 1972 election. Initiative 276, now codified as RCW 42.17, provides a comprehensive financial reporting scheme for lobbyists, campaign committees, public officials and candidates.

RCW 42.17.080 compels disclosure of candidates' campaign finances and those of groups or individuals supporting or opposing candidates or ballot propositions. According to RCW 42.17.090(1), these reports must disclose receipts, expenditures and related information as well as

(j) Such other information as shall be required by the commission by regulation in conformance with the policies and purposes of this chapter; . . .

In addition to the information specified in RCW 42.17-.090, continuing political committees are required by RCW 42.17.065(2) to disclose

(b) Each expenditure made to retire previously accumulated debts of the committee; identified by recipient, amount, and date of payments;

(c) Such other information as the commission shall by rule prescribe.

Employers of registered lobbyists are required by RCW 42.17.180 to report the total expenditures made by the employer for lobbying purposes, and

(6) Such other information as the commission shall by rule prescribe.

RCW 42.17.240 compels elected and appointed officials, candidates for elected office, professional staff members and state college board members to disclose the substance of their personal financial affairs, including the candidate's occupation, employer and business address; all direct financial interests in excess of $5,000 in bank accounts and insurance policies; all other direct financial interests in excess of $500; legal descriptions of real property owned in Washington, and

(l) Such other information as the commission may deem necessary in order to properly carry out the purposes and policies of this chapter, as the commission shall by rule prescribe.

RCW 42.17.240(1)(l).

Significantly, however, none of the catchall provisions listed above apply to lobbyists. The PDC may obtain from lobbyists only that information specified in RCW 42.17.170. No statutory authority to require additional disclosure by lobbyists has been granted to the PDC.

The basic rules of statutory construction applicable to legislative enactments also apply to direct legislation by the people in the form of an initiative. *State ex rel. Public Disclosure Comm'n v. Rains,* 87 Wn.2d 626, 633 n.5, 555 P.2d 1368, 94 A.L.R.3d 933 (1976); *Department of Revenue v. Hoppe,* 82 Wn.2d 549, 552, 512 P.2d 1094 (1973). It is an elementary rule that where certain language is used in one instance, and different language in another, there is a difference in legislative intent. *Crawford v. Burke,*

195 U.S. 176, 190, 49 L. Ed. 147, 25 S. Ct. 9 (1904); *Lankford v. Law Enforcement Assistance Administration,* 620 F.2d 35, 36 (4th Cir. 1980); *Aurora Pizza Hut, Inc. v. Hayter,* 79 Ill. App. 3d 1102, 1105–06, 398 N.E.2d 1150 (1979). Applying this rule to the present case, we conclude that the act restricts the Commission's authority to require information from lobbyists. As indicated above, the PDC may compel candidates, public officials, campaign committees and lobbyists' employers to divulge whatever information it deems necessary to carry out the purposes of the act. The absence of similar rule–making provisions to obtain additional information regarding lobbyists, however, leads us to believe that lobbyists need report only that information specified in RCW 42.17.170.

In upholding Initiative 276 (RCW 42.17) as it pertained to lobbyists, we said:

> To effectuate this goal [of open government], it is important that disclosure be made of the interests that seek to influence governmental decision making. . . . [T]he requirements of . . . reporting . . . [by lobbyists] are designed to exhibit in the public forum the *identities and pecuniary involvements of those individuals and organizations that expend funds to influence government.*

(Italics ours.) *Fritz v. Gorton,* 83 Wn.2d 275, 309, 517 P.2d 911 (1974).

We are mindful both of the need to effectuate open government and of the injunction of RCW 42.17.920 that "The provisions of this act are to be liberally construed to effectuate the policies and purposes of this act." *See also* RCW 42.17.010. Nonetheless, we find nothing in the act which has as its policy or purpose the requirement that a lobbyist bound by the provisions of RCW 42.17.150–.230 disclose more than is mandated by the act. We do not believe the provisions of RCW 42.17.360(4), (5) and RCW 42.17.370(3), (5) give the PDC a warrant to subpoena lobbyists' records other than those specifically connected with the reporting requirements of RCW 42.17.170(2)(a), (c).

Defendant refers us to our statement in connection with RCW 42.17.240 (requiring statements from certain public officials and candidates for elective office):

It would be . . . an anomaly to require each individual to make a personal determination as to what items of his financial affairs would be relevant.

*Fritz v. Gorton, supra* at 300. We reaffirm this statement. However, what should be required of a person covered under the public disclosure act should be determined not by the person who must report nor by the notions of those who administer the act but by the language of the statute. Contrary to the suggestions of defendant that to find for plaintiff would leave the "interpretation of the act to those at whom it was aimed" (*Hearst Corp. v. Hoppe,* 90 Wn.2d 123, 131, 580 P.2d 246 (1978)), it leaves the interpretation of the act to its correct source, the language of the act itself.

No doubt it would be easier for the PDC to accomplish its ends if it could get any information it chose as it chose. Indeed, government arguably might be more efficient if it could get whatever it wanted at its pleasure. Fortunately, the citizens of this state do not subscribe to that doctrine, and government is limited in its reach by the constitution and laws of this state and of the United States. The authority sought here by the PDC has not been granted by statute nor will it be granted by this court.

It is instructive to note what plaintiff has provided to defendant under the provisions of the subpoena duces tecum. This information demanded by defendant and delivered by plaintiff includes:

2. Bookkeeping records and all substantiating documents of Robert A. Seeber and/or the firm of Seeber and Shannon which show the amounts billed to and received from the entities or persons listed in paragraph 1 above during 1977 and 1978.

3. Worksheets and all other records recording legislative or lobbying expenses for 1977 and 1978, showing the original recordings of such expenses, when and how they were separated or distinguished from personal or other business expenses, and when and how they were summa-

rized for lobbyist reporting purposes.

. . .

5. Billings from the Restaurant Association of the State of Washington for 1977 and 1978.

6. Employment contracts, correspondence, and all other documents relating to employment as a lobbyist, lobbying expense reimbursement, or any other payments to or by Mr. Seeber for lobbying during 1977 and 1978.

This information, plus those bank records and credit card receipts and billings relating to lobbying activities which plaintiff has agreed to deliver to the PDC, fulfills the requirements of the statute and, at the same time, the private affairs of the plaintiff are kept separate as contemplated by the statute, RCW 42.17.010(11).

This decision does nothing to disturb the policies or reporting requirements of the public disclosure act. Furthermore, the enforcement provisions of RCW 42.17.350–.400 remain in effect. The Commission may substantiate lobbyists' reports by investigating the employers of lobbyists and the recipients of their favor, the public officials and the candidates. The Commission's rule–making authority, granted in RCW 42.17.065(2)(c), .090(1)(j), .180(6) and .240(1)(l) insures that the Commission has access to information regarding all contributions and other moneys which might pass through the hands of the lobbyist. By omitting such a rule–making grant regarding information received from lobbyists, the legislative intention is clearly to provide the Commission with access only to the information required to be reported by RCW 42.17.170.

As we observed in *Fritz v. Gorton, supra,* the public is entitled to know of the "sources and magnitude of financial and persuasional influences upon government". *Fritz v. Gorton, supra* at 309. But this entitlement is limited to the information required in the act. The information requested by the PDC is not required to be submitted under the act. Given the absence, as previously noted, of a catchall clause, it is reasonable to state that it was not the intention of the people to require such disclosures. Indeed, it is reasonable to assert that the people were aware of the dangers of

inquiring into the private affairs of a lobbyist. Just because the information demanded is claimed to be for purposes of investigation or audit does not justify obtaining information beyond that authorized by the statute.

The trial court is reversed. The subpoena duces tecum is quashed as to paragraphs 1 and 4.

BRACHTENBACH, C.J., ROSELLINI, HICKS, and WILLIAMS, JJ., and RUMMEL, J. Pro Tem., concur.

UTTER, J. (dissenting)—The majority substantially cripples the statutorily granted audit authority of the Public Disclosure Commission. It does so by advancing and adopting an interpretation of the relevant statutes, neither compelled by the language or history of those statutes, and not urged by the parties in oral argument or set forth in their briefs. By its action, it seriously and unnecessarily intrudes this court into the legislative process and undermines the broad policy mandates enacted by the overwhelming majority of the voters of this state.

The majority opinion confuses what is required to be publicly disclosed under the terms of the provisions of the act, subject to inspection by the entire public, with what must be privately disclosed to the audit staff of the Public Disclosure Commission.

The argument of the Commission found in its brief makes this distinction clear.

> First, at this time the Commission is not seeking to give "public disclosure of," or "publicity to," *anything*. The Commission merely is seeking enforcement of its subpoena duces tecum to allow a proper, confidential audit of Mr. Seeber's reports and records. Any copies of, or references to, Mr. Seeber's records made by the Commission in its investigation become part of its investigative file, which generally is exempt from public disclosure under RCW 42.17.310(1)(d).

Brief of Respondent, at 13–14. A protective order may also be obtained under RCW 42.17.330 against public disclosure by the Commission, after its investigation is ended, of any

copies of, or references to, records Seeber feels are covered by his right of privacy.

The public policy of this state regarding public disclosure is extraordinarily broad and clear. RCW 42.17.010 provides:

(1) That political campaign and lobbying contributions and expenditures be fully disclosed to the public and that secrecy is to be avoided.

. . .

(10) That the public's right to know of the financing of political campaigns and lobbying and the financial affairs of elected officials and candidates far outweighs any right that these matters remain secret and private.

(11) That, mindful of the right of individuals to privacy and of the desirability of the efficient administration of government, full access to information concerning the conduct of government on every level must be assured as a fundamental and necessary precondition to the sound governance of a free society.

Finally, lest there be any doubt about the statutory mandate, RCW 42.17.920 commands that "[t]he provisions of this act are to be liberally construed to effectuate the policies and purposes of this act."

The majority argues that the Commission, in statutes governing political campaigns, employers of registered lobbyists, and elected and appointed officials, is given the authority to require those parties or entities, consistent with the policies and purposes of the public disclosure act, to make public such other information as the Commission shall by rule prescribe. RCW 42.17.090(1)(j) (campaign financing); RCW 42.17.065(2)(b), (c) (continuing political committees); RCW 42.17.180 (employers of registered lobbyists); RCW 42.17.240(1) (elected and appointed officials, candidates for elected office, professional staff members and state college board members). The cornerstone of the majority's argument is

Significantly, however, none of the catchall provisions listed above apply to lobbyists. The PDC may obtain from lobbyists only that information specified in RCW 42.17.170. No statutory authority to require additional disclosure by lobbyists has been granted to the PDC.

Majority opinion, at 139. An examination of the terms of the act and the organization of the act confirms the majority's fundamental mistake. The statutes cited by the majority are contained under the legislative titles, "Campaign Financing," "Lobbyist Reporting," and "Reporting of Elected Officials Financial Affairs."

There is nothing in RCW 42.17.370 or the subsections under "Administration and Enforcement", RCW 42.17.350 *et seq.*, that would make public the materials subpoenaed for the audit. This being so, the entire support for the majority's argument no longer exists, as the purpose of the audit sections of the statute differs from the purpose of the disclosure portions.

The authority for the Commission to request those items listed in the subpoena is found in the wording of RCW 42.17.230(1) and 42.17.360(4), (5), and all are contained in the section of the act entitled "Administration and Enforcement."

Every registered lobbyist is required to

obtain and preserve all accounts, bills, receipts, books, papers, and documents necessary to substantiate the financial reports required to be made under this chapter for a period of at least six years from the date of the filing of the statement containing such items, which accounts, bills, receipts, books, papers and documents shall be made available for inspection by the commission at any time . . .

RCW 42.17.230(1).

To determine whether this has in fact been done, the Commission is required to

(4) Investigate whether properly completed statements and reports have been filed within the times required by this chapter;
(5) Upon complaint or upon its own motion, investigate and report apparent violations of this chapter to the appropriate law enforcement authorities;

RCW 42.17.360(4), (5).

In aid of this statutory mandate, the Commission is empowered to

(3) Make from time to time, on its own motion, audits and field investigations;

. . .

(5) Administer oaths and affirmations, issue subpoenas, and compel attendance, take evidence and require the production of any books, papers, correspondence, memorandums, or other records which the commission deems relevant or material for the purpose of any investigation authorized under this chapter, or any other proceeding under this chapter;

RCW 42.17.370(3), (5).

The Commission subpoenaed those records the examiner felt were necessary to substantiate Mr. Seeber's reports of his compensation and expenditures. His refusal to comply with the terms of the subpoena is founded upon his claim that the records sought by the Commission will not give it information relevant to the audit.

The difficulty with this contention is that it places the lobbyist, the person the act was designed to regulate, in the position of being the sole judge of what is or is not appropriate for the Commission's audit, rather than the Commission whose duty it is to verify the lobbyist's report. In other cases we have rejected similar arguments. In *Hearst Corp. v. Hoppe,* 90 Wn.2d 123, 131, 580 P.2d 246 (1978), this court did not accept the contention that RCW 42.17 "leaves interpretation and enforcement of its requirements to the very persons it was designed to regulate." This court reached a similar conclusion in *Fritz v. Gorton,* 83 Wn.2d 275, 300, 517 P.2d 911 (1974), that it would be "an anomaly to require each individual to make a personal determination as to what items of his financial affairs would be relevant."

I find no right to privacy existing under either our federal or state constitutions which would protect Mr. Seeber from his duty to make his records available for audit. *See Fritz v. Gorton, supra* at 306–07.

The majority has confused the public disclosure required under the act with the private disclosure required by the audit staff of the Public Disclosure Commission. This illus-

trates why it is unwise for this court to dispose of a case on theories neither raised nor argued by counsel. If the court believes the argument raised by the majority has possible merit, it should give the parties involved an opportunity to file additional briefs. There is no immediacy compelling the publication of an early opinion in this case, and the rights of the parties and, more importantly, of the public would be preserved by such a procedure.

I believe, however, for reasons already stated, that the argument of the majority, fashioned on its own by this court, is unsound and that to require additional briefs is unnecessary. I would therefore affirm the trial court.

STAFFORD and DIMMICK, JJ., concur with UTTER, J.

Reconsideration denied January 12, 1982.