154 P.3d 194 (2007)
STATE of Washington, Appellant,
v.
John Gilbert CONTE; Frank Francis Colacurcio, Jr.; Frank Francis Colacurcio, Sr.; and Marsha Marie Furfaro, Respondents.
No. 78995-9.
Supreme Court of Washington, En Banc.
Argued November 28, 2006.
Decided March 15, 2007.
*195 Scott Allen Peterson, John Christopher Carver, Seattle, for Appellant.
Robert Steven Mahler, Bullivant Houser Bailey, Irwin H. Schwartz, Richard Alan Hansen, Allen Hansen & Maybrown, PS, John Winn Wolfe, Wolfe Leinbach, Seattle, for Respondents.
MADSEN, J.
¶ 1 The defendants, John Conte, Frank Colacurcio, Jr., Frank Colacurcio, Sr., and Marsha Furfaro, were charged with nine counts of violating RCW 40.16.030. The charges relate to campaign disclosure reports filed by three Seattle City Council members during their 2003 reelection campaigns. The State alleges that contributions made by some individuals to these council members were reimbursed in cash by the defendants. The State further alleges that as a result of the defendants' scheme, the candidates filed false campaign disclosure reports because they did not identify the true source of the contributions.
¶ 2 The trial court granted the defendants' motion for dismissal of the charges, holding, as a matter of law, that the public disclosure act (PDA), chapter 42.17 RCW, provides the exclusive penalties for the conduct alleged by the State.
¶ 3 The State maintains that chapter 42.17 RCW does not bar prosecution of the defendants under RCW 40.16.030. We agree. Accordingly, we reverse the trial court, reinstate the charges against the defendants, and remand for further proceedings.

FACTS
¶ 4 On July 12, 2005, the State filed an information charging the defendants with one count each of conspiracy to offer a false instrument for filing or record, in violation of RCW 40.16.030 and RCW 9A.28.040(1).[1] The information also charges each of the defendants with at least one count of knowingly procuring, offering, or causing an innocent person to offer a false instrument for filing or record in violation of RCW 40.16.030 and RCW 9A.08.020(1) and (2)(a) (a total of eight additional counts each applying to one or two of the defendants).[2]
*196 ¶ 5 According to the certification for determination of probable cause, which was prepared by an investigator for the Seattle Ethics and Elections Commission:
The Colacurcio family owns and operates Rick's, an adult entertainment establishment commonly called a strip club . . . [and] sought a rezone to obtain more parking for Rick's for a number of years. In the 1980's additional parking was created on property owned by Rick's without city approval. Rick's was given the option of removing the parking lot or paying a fine, and chose to pay the fine. Rick's then initiated efforts to get the parking approved for use by obtaining a rezone. Attempts to get the rezone failed in 1988 and 1998.

Rick's applied again in September 2002. The rezone was opposed by the City [of Seattle] and denied by a hearing examiner. Rick's appealed, so the rezone issue was set to be decided by the City Council, acting as a quasi-judicial body. When issues are to be resolved by the City Council acting in a quasi-judicial capacity, City Council rules prohibit council members from undisclosed ex-parte contact with litigants or their agents. On July 7, 2003, the City Council approved the rezone 5-4.
In the fall of 2003 the Seattle Ethics and Elections Commission . . . fined council members Jim Compton and Heidi Wills for violation of [Seattle Municipal Code (SMC)] 4.16.070(1)(a) when they voted on the rezone after undisclosed ex-parte contacts with representatives of Rick's. Judy Nicastro was fined $200 for violating SMC 4.16.070(3)(a) because she accepted a lunch paid for by Albert D. Rosellini, . . . a close personal friend of the Colacurcio family . . . [d]uring [which he] lobbied Nicastro to grant the zoning change. . . . Wills was fined $1,500 for voting with impaired judgment, because she had toured the Rick's rezone site with Albert Rosellini . . . after she had been notified the rezone issue was quasi-judicial.
News reports . . . mentioned that Compton, Nicastro, and Wills had received a total of about $36,000 from "people connected to Frank Colacurcio, Jr." (Seattle Times July 19, 2003 article.) . . . These contributions were received by the candidates' reelection committees before the rezone was approved. After these contributions came to light, each of the three candidates refunded all of the contributions.
Clerk's Papers (CP) at 6-7. The certification for determination of probable cause explains that in November 2003 the commission learned two contributors to Nicastro's campaign had been reimbursed for their contributions, and then "[i]nvestigators began looking at the bank records of other persons who contributed to Compton, Nicastro, or Wills and who were known to have ties to the Colacurcios." CP at 9. The investigators identified 14 persons whose contributions were reimbursed by the defendants. The certification also explains some of the campaign contribution reporting requirements of the SMC and the PDA. The certification states that the defendants caused the council members' election campaign committees to file false campaign finance reports with the Seattle City Clerk, the Washington State Public Disclosure Commission, or both, pursuant to the SMC and the PDA.
¶ 6 Following arraignment, each of the defendants pled not guilty to the charges against him or her. On January 20, 2006, the defendants filed motions to dismiss on various grounds. Only the first motion is at issue. In this motion the defendants argued that the civil enforcement provisions of chapter 42.17 RCW "preempt" the general criminal penalties in RCW 40.16.030. They also argued that criminal prosecution under RCW 40.16.030 would violate their due process rights. Judge Michael J. Fox granted the motion. The State appealed. On July 28, 2006, we accepted the Court of Appeals certification of the case.

*197 ANALYSIS
¶ 7 A trial court's pretrial dismissal of criminal charges pursuant to a Knapstad motion[3] is subject to de novo review. State v. Freigang, 115 Wash.App. 496, 501, 61 P.3d 343 (2002). Similarly, because the issue whether chapter 42.17 RCW precludes prosecution under RCW 40.16.030 is an issue of statutory construction, appellate review is de novo. In re Custody of Shields, 157 Wash.2d 126, 140, ¶ 35, 136 P.3d 117 (2006). Our goal is to determine whether the legislature intended that the penalty provisions of chapter 42.17 RCW bar prosecution under RCW 40.16.030. See id.
¶ 8 The State maintains that the trial court erred in dismissing the information, arguing that the "general-specific" rule applied by the trial court is not applicable under the circumstances. Under this rule, if "concurrent general and special acts are in pari materia and cannot be harmonized, the latter will prevail, unless it appears that the legislature intended to make the general act controlling." Wark v. Wash. Nat'l Guard, 87 Wash.2d 864, 867, 557 P.2d 844 (1976); see also In re Estate of Kerr, 134 Wash.2d 328, 343, 949 P.2d 810 (1998) ("[a] more specific statute supersedes a general statute only if the two statutes pertain to the same subject matter and conflict to the extent they cannot be harmonized"). State v. Presba, 131 Wash. App. 47, 52, ¶ 9, 126 P.3d 1280 (2005) ("when a specific statute punishes the same conduct punished under a general statute, they are concurrent statutes and the State must charge only under the specific statute"); Port Townsend Sch. Dist. No. 50 v. Brouillet, 21 Wash.App. 646, 655, 587 P.2d 555 (1978) ("[i]t is a fundamental rule of statutory construction that where a general statute and a subsequent special statute relate to the same subject matter, the provisions of the special statute will prevail unless it appears that the legislature intended expressly to make the general statute controlling").
¶ 9 RCW 40.16.030, which the defendants argue is the superseded general statute, enacted in 1909, provides:
Every person who shall knowingly procure or offer any false or forged instrument to be filed, registered, or recorded in any public office, which instrument, if genuine, might be filed, registered or recorded in such office under any law of this state or of the United States, is guilty of a class C felony and[4] shall be punished by imprisonment in a state correctional facility for not more than five years, or by a fine of not more than five thousand dollars, or by both.
¶ 10 The statutes that are said to constitute the "special" or "specific" statute are found in chapter 42.17 RCW. To place them in context, we provide a brief explanation of the relevant statutory scheme. In 1972 and 1992 the voters enacted two initiatives that comprise the greater part of the PDA. Initiative 276 (I-276) was approved by the voters in 1972 and codified as chapter 42.17 RCW. Among other purposes of I-276 are the following, codified at RCW 42.17.010:
It is hereby declared by the sovereign people to be the public policy of the state of Washington:
(1) That political campaign and lobbying contributions and expenditures be fully disclosed to the public and that secrecy is to be avoided.
. . . .
(3) That the people shall be assured that the private financial dealings of their public officials, and of candidates for those offices, present no conflict of interest between the public trust and private interest.
. . . .
(10) That the public's right to know of the financing of political campaigns and lobbying and the financial affairs of elected officials and candidates far outweighs any right that these matters remain secret and private.
Modifications have been made to chapter 42.17 RCW since I276 was implemented in 1973. Chief among these, in 1992 the voters approved Initiative 134 (I-134), the Fair *198 Campaign Practices Act (Laws of 1993, ch. 2, §§ 1-36), which supplemented and amended the chapter. Senate Republican Campaign Comm. v. Pub. Disclosure Comm'n, 133 Wash.2d 229, 233, 943 P.2d 1358 (1997).
¶ 11 The statutes in chapter 42.17 RCW, then, require that the public be informed of campaign and lobbying contributions and, through this disclosure, help to ensure the integrity of government, and they require that campaign contributions be limited to prevent disproportionate or controlling influence by financially strong groups. See Nelson v. McClatchy Newspapers, Inc., 131 Wash.2d 523, 532-33, 936 P.2d 1123 (1997); State v. (1972) Dan J. Evans Campaign Comm., 86 Wash.2d 503, 507-08, 546 P.2d 75 (1976); Fritz v. Gorton, 83 Wash.2d 275, 284, 517 P.2d 911 (1974).
¶ 12 Chapter 42.17 RCW includes two statutes that the defendants concede would be violated if the State's allegations were proven and its theory of the law was correct. RCW 42.17.120 provides that
[n]o contribution shall be made and no expenditure shall be incurred, directly or indirectly, in a fictitious name, anonymously, or by one person through an agent, relative, or other person in such a manner as to conceal the identity of the source of the contribution or in any other manner so as to effect concealment.
And RCW 42.17.780 provides: "A person may not, directly or indirectly, reimburse another person for a contribution to a candidate for public office, political committee, or political party."
¶ 13 As the trial court determined, violation of either of these statutes would subject the defendants to the punitive and enforcement sections of chapter 42.17 RCW, RCW 42.17.390 and .400. RCW 42.17.390 provides that "[o]ne or more of the following civil remedies and sanctions may be imposed by court order in addition to any other remedies provided by law" and then lists a number of possible sanctions. RCW 42.17.400 governs enforcement and provides that the attorney general and the prosecuting authorities of the State's political subdivisions "may bring civil actions in the name of the state for any appropriate civil remedy, including but not limited to the special remedies provided in RCW 42.17.390." RCW 42.17.400(1). It also provides for citizens' actions if the attorney general and prosecuting attorney fail to bring an action within specified time periods. RCW 42.17.400(4).
¶ 14 The trial court determined that the PDA constitutes a comprehensive statutory scheme setting out prohibited acts and requirements, including reporting requirements, for candidates and contributors. The court granted the motion to dismiss on the basis that because the act "treated the entire subject area of political contributions to local and state-wide campaigns," the general-specific rule applies, with the penalty provisions of chapter 42.17 RCW being the controlling "specific statute" under which the State must charge. Tr. of Proceedings (Feb. 16, 2006) at 26.[5]
¶ 15 For a number of reasons, we disagree. First, RCW 42.17.390 expressly provides that "other remedies provided by law" are not displaced by chapter 42.17 RCW. Second, the "general-specific" rule is not applicable both because chapter 42.17 RCW and RCW 40.16.030 are not in conflict and because there is insufficient support for any conclusion that the legislating body, the people, intended that chapter 42.17 RCW supersede RCW 40.16.040. And finally, we do not believe the rule applies where a criminal statute and civil statute are in question. Absent explicit legislative command that a civil statute precludes prosecution under an existing criminal statute or that the criminal statute *199 is repealed, the "general-specific" rule does not apply because its application would infringe on the prosecuting attorney's discretion to charge a crime.
¶ 16 Turning to the first of these reasons, as set out above, RCW 42.17.390 expressly states that the civil remedies and sanctions set forth in the statute "may be imposed by court order in addition to any other remedies provided by law." (Emphasis added.) Thus, the PDA expressly provides that any remedy available under any other statute may be imposed.
¶ 17 The defendants maintain, however, that no lay voter would reasonably construe the reference to "other remedies" to mean criminal penalties. They contend that a court must view the language as the average informed lay voter would read it, relying on State ex rel. Evergreen Freedom Foundation v. Washington Education Association, 140 Wash.2d 615, 637, 999 P.2d 602 (2000) and Senate Republican Campaign Committee, 133 Wash.2d at 243, 943 P.2d 1358. However, because the statute mentions a number of monetary fines and penalties, and repeatedly refers specifically to "civil penalt[ies]," RCW 42.17.390(3), (4), (5), it appears to us just as reasonable (if not more so) that the informed lay voter would think that the reference to "any other remedies provided by law" means penalties other than the "civil penalt[ies]," i.e., criminal penalties. RCW 42.17.390 (emphasis added).
¶ 18 Moreover, once an initiative is enacted into law, the same principles of statutory construction apply as apply when the legislature enacts a measure. McGowan v. State, 148 Wash.2d 278, 288, 60 P.3d 67 (2002); Wash. State Republican Party v. Pub. Disclosure Comm'n, 141 Wash.2d 245, 280, 4 P.3d 808 (2000); City of Spokane v. Taxpayers of Spokane, 111 Wash.2d 91, 97, 758 P.2d 480 (1988). One of these principles of statutory construction is that the legislature is "`presumed to have full knowledge of existing statutes affecting the matter upon which they are legislating.'" Martin v. Triol, 121 Wash.2d 135, 148, 847 P.2d 471 (1993) (quotation marks omitted) (quoting Bennett v. Hardy, 113 Wash.2d 912, 926, 784 P.2d 1258 (1990)). Thus, the voters must be presumed to have known that RCW 40.16.030 made it a felony to knowingly offer any false or forged instrument for filing when they enacted I-276 in 1972 and I-134 in 1992. Yet, the initiative did not provide that the criminal statute was no longer effective.
¶ 19 The defendants maintain, however, that the voters intended this statutory scheme to exclusively regulate the field and knew that it would necessarily preempt the earlier general statute. See Wark, 87 Wash.2d at 866, 557 P.2d 844. The defendants maintain that the sole provisions regarding penalties and remedies, RCW 42.17.390 and .400, do not impose or authorize any criminal sanctions. Further, they urge, unlike other statutes that expressly preserve the right to bring criminal actions, such as state securities law, RCW 21.20.420, and the workers' compensation law, RCW 50.36.010, chapter 42.17 RCW does not contain such a provision. These considerations, the defendants maintain, lead to the conclusion that when the voters enacted I-276 in 1972 and I-134 in 1992, they intended that the provisions in chapter 42.17 RCW would preempt any other statutes penalizing conduct within their purview.
¶ 20 But the defendants point to no express indicator that the voters intended to foreclose criminal prosecutions under existing statutes. Further, the reference to "any other remedies provided by law" in RCW 42.17.390 expressly shows that other civil remedies are not precluded. If other civil penalties are not foreclosed, then it necessarily follows that the act is not intended to be exclusive or to "preempt the field," contrary to the defendants' claim.
¶ 21 The defendants also contend, though, that because the term "any other remedies provided by law" in RCW 42.17.390 follows the phrase "civil remedies and sanctions" the two should be read together, and "and other remedies provided by law" should be understood to mean other consistent civil remedies. We do not find this argument convincing. Rather than suggesting that only the same kind of remedies are preserved, the words "any other" suggest additional remedies can be of any kind, including criminal remedies.
*200 ¶ 22 The defendants also rely on United States v. Hansen, 249 U.S.App. D.C. 22, 772 F.2d 940, 946 (1985), where the court, addressing the phrase "`[s]uch remedy shall be in addition to any other remedy available under statutory or common law'" (quoting 2 U.S.C. § 706), said that it "seems specifically directed to civil actions since criminal sanctions are rarely described as `remedies.'" But in contrast, this court has expressly made reference to "criminal remedies" on a number of occasions, and, more importantly for present purposes, so has the legislature. See, e.g., In re Det. of C.W., 147 Wash.2d 259, 282, 53 P.3d 979 (2002) (referring to "`civil and criminal remedies'"); Winchester v. Stein, 135 Wash.2d 835, 849, 959 P.2d 1077 (1998) (referring to "both civil and criminal remedies" available under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-1968, and the Washington Criminal Profiteering Act, chapter 9A.82 RCW); City of Tacoma v. State, 117 Wash.2d 348, 351, 816 P.2d 7 (1991) (referring to "criminal remedies" under the domestic violence act of 1979); RCW 49.60.020 (providing that nothing contained in the provisions of Washington's law against discrimination "shall . . . be construed to deny the right to any person to institute any action or pursue any civil or criminal remedy based upon an alleged violation of his or her civil rights" (emphasis added)).
¶ 23 The defendants also maintain that the Court of Appeals has read the phrase "other remedies" narrowly, citing Crisman v. Pierce County Fire Protection District No. 21, 115 Wash.App. 16, 60 P.3d 652 (2002). Crisman does not support the defendants' argument. There, the plaintiff claimed that the phrase "in addition to any other remedies provided by law" permitted recovery through a private tort action. The court rejected the claim, finding that chapter 42.17 RCW does not show legislative intent to create an implied private tort cause of action. In the present case, in contrast, the question is whether an existing criminal statute can be utilized in addition to civil remedies. Crisman is not analogous.
¶ 24 We conclude that the express acknowledgement in RCW 42.17.390 that the remedies listed do not preclude "any other remedies provided by law" shows that chapter 42.17 RCW is not intended to preclude a criminal action under RCW 40.16.040.
¶ 25 The second reason that the trial court's conclusion is incorrect is that, as noted, "[a] more specific statute supersedes a general statute only if the two statutes pertain to the same subject matter and conflict to the extent they cannot be harmonized." In re Estate of Kerr, 134 Wash.2d at 343, 949 P.2d 810. Here, as the State argues, there is no conflict between RCW 40.16.040 and chapter 42.17 RCW.
¶ 26 Under RCW 42.17.400, the attorney general or a county prosecuting attorney can bring an action to impose a fine or other civil remedy for a violation of a provision of chapter 42.17 RCW. Under RCW 42.17.390, a civil penalty of not more than $10,000 can be imposed for a violation of any provision of the chapter; violations of RCW 42.17.640 (setting campaign limits) are subject to fines of $10,000 or three times the amount of the illegal contribution, whichever is greater; fines of $10 per day may be imposed for each day a properly completed statement of report required by the chapter is delinquent; and a civil penalty equivalent to the amount an individual fails to report as a contribution or expenditure may be imposed.
¶ 27 Working in tandem, RCW 40.16.030 provides that a person can be convicted of a felony for filing or causing to be filed a campaign finance report that he or she knows is false, and then only if all the elements of the offense are proven beyond a reasonable doubt. As the State argues, it is only when a person "knowingly" causes the public to be provided with false information that an individual "crosses the line" into criminal accountability.
¶ 28 The State also maintains that the two statutes are not concurrent, and thus the "general-specific" rule does not apply. We agree. Statutes are concurrent for purposes of the rule if "the general statute will be violated in each instance where the special statute has been violated." State v. Shriner, 101 Wash.2d 576, 580, 681 P.2d 237 (1984). "It is not relevant that the special statute *201 may contain additional elements not contained in the general statute." Id. Initially, as the State maintains, the burden of proof for the criminal statute, beyond a reasonable doubt, is not the same as it is for a civil violation under chapter 42.17 RCW. Further, as the State maintains, RCW 40.16.030 contains a mens rea requirement. Violations of chapter 42.17 RCW can occur that would not meet the beyond a reasonable doubt standard and would not involve a "knowingly" mental state. Thus, the two statutes are not concurrent.[6]
¶ 29 The defendants say, though, that RCW 42.17.920 precludes reliance on RCW 40.16.030. RCW 42.17.920 states that "[i]n the event of conflict between the provisions of this act and any other act, the provisions of this act shall govern." But there is no conflict. In addition, RCW 42.17.920 must be read in conjunction with RCW 42.17.390, which expressly authorizes "any other remedies provided by law." Because chapter 42.17 RCW expressly authorizes such "other remedies," they are not in conflict with the chapter.
¶ 30 The State says a prosecution and conviction under RCW 40.16.030 is consistent with the declaration of policy found in the first section of I-276: "It is hereby declared by the sovereign people to be the public policy of the State of Washington . . . [t]hat political campaign and lobbying contributions and expenditures be fully disclosed to the public and that secrecy is to be avoided." Laws of 1973, ch.1, § 1 (I-276). Thus, rather than acting in conflict with chapter 42.17 RCW, RCW 40.16.030 serves the purposes of the PDA.
¶ 31 The State's observation that a criminal prosecution under RCW 40.16.030 can effectuate public policy set out in chapter 42.17 RCW also highlights the distinctive nature of RCW 40.16.030. Prosecution under the criminal statute will always effectuate the goal of another statute or regulation. In State v. Hampton, 143 Wash.2d 789, 793-94, 24 P.3d 1035 (2001), we repeated the test for defining an instrument falling within the scope of the statute:
"RCW 40.16.030 encompass[es] a document which is required or permitted by statute or valid regulation to be filed, registered, or recorded in a public office if (1) the claimed falsity relates to a material fact represented in the instrument; and (2a) the information contained in the document is of such a nature that the government is required or permitted by law, statute or valid regulation to act in reliance thereon; or (2b) the information contained in the document materially affects significant rights or duties of third persons, when this effect is reasonably contemplated by the express or implied intent of the statute or valid regulation which requires the filing, registration, or recording of the document."
(Quoting State v. Price, 94 Wash.2d 810, 819, 620 P.2d 994 (1980) (alteration in original).) "RCW 40.16.030 requires that a document be `required or permitted by law, statute or valid regulation.'" Hampton, 143 Wash.2d at 794, 24 P.3d 1035 (quoting Price, 94 Wash.2d at 819, 620 P.2d 994).
¶ 32 The defendants argue that chapter 42.17 RCW is not ambiguous, but if it were found to be ambiguous, the history and context of I-276 would support their claim. They point out that nothing in the ballot title of I-276 mentions the possibility of criminal prosecution and a section of the 1972 voters' pamphlet entitled "The Law as it now exists" noted only that "[p]resently, candidates seeking nomination at a primary election must file a statement indicating the expenditures made for the purpose of obtaining their nomination. Violation is a misdemeanor." CP at 47. The defendants conclude that the people were thus informed they were being asked to approve a comprehensive scheme imposing only civil penalties and that doing so would repeal existing criminal penalties on the subject.
*202 ¶ 33 We do not agree. Nothing in the voters' pamphlet or in I-276 stated that I-276 was intended to repeal RCW 40.16.030, either in whole or in part.
¶ 34 The defendants say, though, that in the same election the ballot included an alternative campaign finance law proposed by the legislature, Referendum Bill 25 (R-25), with the ballot title and text informing voters of the referendum's criminal penalties (those violating the act would be guilty of misdemeanors). Because the voters chose I-276 over R-25, the defendants claim, this shows they understood the State's campaign laws would be enforced strictly through civil penalties.
¶ 35 As this court has often reasoned, legislative intent cannot be gleaned from the failure to enact a measure, particularly where there are several different components of it, any one of which might be critical to the decision to reject. See, e.g., Leeper v. Dep't of Labor & Indus., 123 Wash.2d 803, 816, 872 P.2d 507 (1994) (rejection of a bill with five sections, four of which had nothing to do with the subject matter at issue, was not evidence of legislative intent); Spokane County Health Dist. v. Brockett, 120 Wash.2d 140, 839 P.2d 324 (1992) (court will not speculate as to why the legislature rejects a proposed amendment). Here, speculation would not only be required for a measure with multiple sections (R-25 contained 20 substantive sections regulating electoral campaign financing), but, more significantly, it would be required for purposes of determining what rejection of one measure means to a separate measure altogether. We decline defendants' invitation to speculate.
¶ 36 There is no conflict between RCW 40.16.030 and chapter 42.17 RCW. Both can be given effect and harmonized.
¶ 37 The final reason why the "general-special" rule does not apply is because one of the statutes at issue is criminal and the other is civil. In two cases the Court of Appeals has addressed the "general-specific" argument in the context of a criminal statute and a civil statute. In each of the cases, Division Two rejected the claim that chapter 70.24 RCW is a special statute precluding prosecution under RCW 9A.36.011(1)(b), first degree assault with sexual motivation. Each case involved a defendant who had been diagnosed HIV (human immunodeficiency virus) positive and then engaged in unprotected sexual encounters. Chapter 70.24 RCW authorizes a public health officer to counsel a person with a sexually transmitted disease and, if necessary, to issue an order to cease and desist conduct that endangers the health of others, and, if other procedures have been exhausted, to bring an action to detain the person in a designated facility for a period of counseling and education not to exceed 90 days.
¶ 38 In State v. Whitfield, 132 Wash.App. 878, 134 P.3d 1203 (2006), the court explained, as it had in an earlier case, that while chapter 70.24 RCW provides a potential civil remedy, nothing in the chapter precludes the prosecutor from choosing to file criminal charges rather than exhausting available civil remedies. Id. at 889, ¶ 22, 134 P.3d 1203 (citing State v. Stark, 66 Wash. App. 423, 431-32, 832 P.2d 109 (1992)). The court also noted that "[t]he exercise of prosecutorial discretion on whether to criminally charge someone involves a number of considerations, not the least of which is the public interest." Stark, 66 Wash.App. at 431, 832 P.2d 109.
¶ 39 Absent a very clear indication that the legislature intended that a civil statute preclude prosecution under a criminal statute, we will not apply the "general-specific" rule to foreclose the exercise of prosecutorial discretion or to negate the legislature's determination that the conduct described by the criminal statute is subject to prosecution as a crime.
¶ 40 Moreover, it is not unusual for criminal and civil statutes to "co-exist," as the State puts it. E.g., United States v. Ursery, 518 U.S. 267, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996) (criminal prosecution and civil property forfeiture for the same offense do not violate double jeopardy); State v. Catlett, 133 Wash.2d 355, 945 P.2d 700 (1997) (same). The "general-specific" rule should be applied to preclude a criminal prosecution only where the legislative intent is crystal clear.
*203 ¶ 41 We hold that chapter 42.17 RCW does not preclude prosecution under RCW 40.16.030.
¶ 42 We briefly note other arguments made by the defendants. Although the defendants maintain that the doctrine of repeal by implication does not apply in this case, the parties have devoted considerable attention to the issue. The matter is readily resolved. Implied repeal is disfavored and will be found only (1) where the later act covers the entire field of the earlier one, is complete in itself, and is intended to supersede prior legislation, or (2) where the two acts cannot be reconciled and both given effect by a fair and reasonable construction. Amalgamated Transit Union Legislative Council v. State, 145 Wash.2d 544, 552, 40 P.3d 656 (2002); Local No. 497, Int'l Bhd. of Elec. Workers v. Pub. Util. Dist. No. 2 of Grant County, 103 Wash.2d 786, 788-89, 698 P.2d 1056 (1985). The first of these tests is not satisfied because chapter 42.17 RCW does not cover the entire subject matter of RCW 40.16.030. For example, as the State points out, RCW 40.16.030 applies to instruments such as child support orders. State v. Sanders, 86 Wash.App. 466, 937 P.2d 193 (1997). As to the second test, as explained above the State shows that the two statutes can be harmonized and both given effect.
¶ 43 The defendants also argue that the public disclosure commission's regulations and the SMC interpret chapter 42.17 RCW to preclude criminal penalties. As to the latter, it makes no difference how drafters of the SMC interpret chapter 42.17 RCW. As to the former, the defendants rely on regulations that encourage the parties to consider alternative, informal resolution procedures. WAC 390-37-010; -090. However, the PDC's preference for informal resolution does not preclude a prosecutor's decision to file criminal charges based on the same conduct or conduct which is more egregious.
¶ 44 The parties debate whether giving effect to both statutes would undermine enforcement under chapter 42.17 RCW. The defendants maintain that if the State can criminally prosecute the defendants under RCW 40.16.030, then the State would also be free to ignore the civil statutes. Br. of Resp't's at 34. As the State points out, however, a number of campaign law violations will not rise to the level of the felony conduct described by RCW 40.16.030. Moreover, the State's ability to charge under two statutes is not a reason to hold that one of the statutes must prevail over the other.
¶ 45 The defendants next argue that if we reverse the trial court on statutory interpretation grounds, as we do, we should nonetheless affirm the trial court's dismissal of the charges on the alternative basis that the defendants were not provided with fair notice that their conduct would be subject to criminal prosecution. Defendants due process claim is based on article I, section 3 of the Washington Constitution. They do not argue that a different due process analysis applies under the state constitution than applies under the federal constitution and therefore the federal analysis will be applied here. See State v. Sullivan, 143 Wash.2d 162, 180 n. 73, 19 P.3d 1012 (2001).
¶ 46 The defendants' due process argument fails because they make absolutely no argument at all about RCW 40.16.030 itself and whether this statute provides fair notice of the conduct that it proscribes and standards to prevent arbitrary enforcement. State v. Harner, 153 Wash.2d 228, 237, 103 P.3d 738 (2004); State v. Riles, 135 Wash.2d 326, 348, 957 P.2d 655 (1998). Because they have not even addressed RCW 40.16.030, they clearly have not met their burden of establishing the unconstitutionality of the statute under which they were charged beyond a reasonable doubt.
¶ 47 Accordingly, the trial court's dismissal of the charges will not be affirmed on the alternate due process ground asserted by the defendants.

CONCLUSION
¶ 48 Through its disclosure and limitation requirements, chapter 42.17 RCW helps to ensure the integrity of government by preventing disproportionate or controlling influence by financially strong groups. To carry out this public purpose, conduct prohibited under the chapter may be sanctioned through civil remedies under the chapter "in *204 addition to any other remedies provided by law." RCW 42.17.390. We hold that chapter 42.17 RCW is not a specific statute that precludes prosecution under RCW 40.16.030 for conduct that is subject to the penalty provisions of both statutes. Thus, in the appropriate case, one remedy available to prosecuting authorities is prosecution under RCW 40.16.030. We reverse the trial court, reinstate the charges against the defendants, and remand for further proceedings consistent with this opinion.
WE CONCUR: Chief Justice GERRY L. ALEXANDER, SUSAN OWENS, MARY E. FAIRHURST, JAMES M. JOHNSON, BOBBE J. BRIDGE, JJ.
SANDERS, J. dissenting.
¶ 49 John Conte, Frank Colacurcio, Jr., Frank Colacurcio, Sr., and Marsha Furfaro were charged with nine counts of violating RCW 40.16.030. Defendants allegedly reimbursed individuals for campaign contributions, thereby concealing the identity of the contributors and sources of the contributions. Because of defendants' alleged scheme, certain Seattle City Council members' election campaign committees filed false campaign finance reports.
¶ 50 Initiative 276 (I-276), overwhelmingly approved in 1972 by the people of Washington, specifically regulates and prohibits this precise conduct. Seeber v. Pub. Disclosure Comm'n, 96 Wash.2d 135, 138, 634 P.2d 303 (1981). Now codified at chapter 42.17 RCW, I-276 "provides a comprehensive financial reporting scheme for lobbyists, campaign committees, public officials and candidates." Seeber, 96 Wash.2d at 138, 634 P.2d 303. The people created the initiative for the "expressed purpose of fostering openness in their government"; its creation reflects our belief that the electorate "has the right to know of the sources and magnitude of financial and persuasional influences upon government." Fritz v. Gorton, 83 Wash.2d 275, 309, 517 P.2d 911 (1974). See RCW 42.17.010(2) ("[T]he people have the right to expect from their elected representatives at all levels of government the utmost of integrity, honesty, and fairness in their dealings.").
¶ 51 As the majority states, "[c]hapter 42.17 RCW includes two statutes that the defendants concede would be violated if the State's allegations were proven and its theory of the law was correct." Majority at 198. Yet despite these two statutes specifically proscribing defendants' precise conduct and the State's concession that RCW 40.16.030 has never before been applied to a campaign violation, the majority holds chapter 42.17 RCW does not bar prosecution of defendants under RCW 40.16.030. I disagree as the public disclosure act (PDA), chapter 42.17 RCW, limits the State to civil recoveries.
1. The Plain Meaning of Chapter 42.17 RCW Limits the State to Civil Remedies
¶ 52 Our goal is to ascertain and implement the legislature's intent. Dep't of Transp. v. State Employees' Ins. Bd., 97 Wash.2d 454, 458, 645 P.2d 1076 (1982). To determine legislative intent, "we begin with the statute's plain language and ordinary meaning." Nat'l Elec. Contractors Ass'n v. Riveland, 138 Wash.2d 9, 19, 978 P.2d 481 (1999). "If a statute is plain and unambiguous, its meaning must be primarily derived from the language itself." Cockle v. Dep't of Labor & Indus., 142 Wash.2d 801, 807, 16 P.3d 583 (2001). "Plain language does not require construction." Koenig v. City of Des Moines, 158 Wash.2d 173, 181, 142 P.3d 162 (2006) (citing State v. Thornton, 119 Wash.2d 578, 580, 835 P.2d 216 (1992)).
¶ 53 As defendants correctly observe, the unambiguous language of chapter 42.17 RCW indicates the act's penalties are "complete, exclusive and non-criminal." Br. of Resp'ts at 12. The trial judge correctly determined chapter 42.17 RCW "constitute[s] a comprehensive statute providing for a series of prohibited acts and requirements on political candidates and contributors[;] . . . [the statute] treat[s] the entire subject area of political contributions to local and state-wide campaigns." Transcript of Proceedings (Feb. 16, 2006) at 26. RCW 42.17.390 and .400 provide the act's "sole provisions regarding penalties and remedies" and neither authorizes the imposition of criminal sanctions. Br. of Resp'ts at 12. Chapter 42.17 RCW empowers and specifically limits state attorneys and *205 county prosecutors to bring only "civil actions" for "civil remed[ies];" it provides:
The attorney general and the prosecuting authorities of political subdivisions of this state may bring civil actions in the name of the state for any appropriate civil remedy, including but not limited to the special remedies provided in RCW 42.17.390.
RCW 42.17.400(1) (emphasis added).
¶ 54 "[A]ny appropriate civil remedy" should end our analysis as it explicitly limits the State to civil remedies. The "special remedies" provided in RCW 42.17.390 and the statute's reference to "any other remedies provided by law" (upon which the majority incorrectly fixates) is merely a subset of "any appropriate civil remedies." Contrary to the majority's belief, the clause "any other remedies provided by law" is not an invitation for the State to impose criminal sanctions.
2. RCW 40.16.030 Is Not Remedial
¶ 55 RCW 42.17.400(1) authorizes the State to bring "civil actions . . . for any appropriate civil remedy." (Emphasis added.) The "special remedies" provided in RCW 42.17.390 also limit enforcement options to civil remedies and sanctions. See RCW 42.17.390 ("[o]ne or more of the following civil remedies and sanctions may be imposed by court order in addition to any other remedies provided by law" (emphasis added)). As stated above, the majority mistakenly emphasizes the phrase "any other remedies provided by law," believing it indicates "additional remedies can be of any kind, including criminal remedies." Majority at 200. But the majority fails to focus on the statute's reference to the word "remedies." Because RCW 40.16.030 is neither civil nor remedial, it does not qualify as one of the intended "other remedies" cited by the statute. See United States v. Hansen, 249 U.S.App. D.C. 22, 772 F.2d 940, 946 (1985) (criminal sanctions are rarely described as "remedies").
¶ 56 RCW 42.17.390's language aptly reflects the predominantly remedial character of the legislation. See RCW 42.17.390(1) (providing for an election to be held void if the court finds a violation of this chapter probably affected the outcome of an election and stating, "[i]t is intended that this remedy be imposed freely . . . to protect the right of the electorate to an informed and knowledgeable vote"); RCW 42.17.390(2) (providing for a lobbyist's registration to be revoked or suspended should he violate this chapter); RCW 42.17.390(3) ("[a]ny person who violates any provisions of this chapter may be subject to a civil penalty"); RCW 42.17.390(6) (providing for injunctive relief). See 3 Norman J. Singer, Sutherland Statutory Construction § 60.02, at 152-53 (5th ed. 1992) ("Usually `remedial' is used in connection with legislation which is not penal or criminal in nature, in that such laws do not impose criminal or other harsh penalties.").
¶ 57 By contrast, RCW 40.16.030 is punitive: "Every person who shall knowingly procure or offer any false or forged instrument to be filed, registered, or recorded in any public office . . . shall be punished by imprisonment . . . or by a fine. . . ." Unlike civil statutes, which are considered remedial, criminal statutes are generally associated with punitive consequences.[1]United States v. Ursery, 518 U.S. 267, 277, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996). Because RCW 40.16.030's sanctions are punitive it is not a "civil remedy" contemplated by chapter 42.17 RCW and is therefore inapplicable to defendants.
3. The History of Chapter 42.17 RCW and the 1972 Voters Pamphlet Confirms the PDA Limits the State to Civil Remedies
¶ 58 Generally, only when the language of an initiative is ambiguous do we look to other extrinsic sources, such as the voters pamphlet, to determine electoral intent. Parents Involved in Cmty. Sch. v. Seattle Sch. Dist. No. 1, 149 Wash.2d 660, 671, 72 P.3d 151 (2003). Since chapter 42.17's language unambiguously allows the State to seek only civil remedies, our analysis need not go further. *206 However, even if the statutory language was ambiguous, the history of I-276 supports defendants' position. I-276's ballot title, explanatory comments, and the text of the initiative itself informed voters the act would provide only "civil penalties." Clerk's Papers (CP) at 46-47, 50-61, 68.
¶ 59 Importantly, the 1972 ballot included an alternative campaign finance law, Referendum Bill 25, described by its supporters as "a strict, realistic approach to the reporting and limiting of campaign contributions and expenditures." CP at 48. Referendum Bill 25 also proposed a comprehensive statutory scheme for regulating campaign contributions and expenditures, yet provided for "criminal penalties" instead of civil. CP at 48, 68 (voters were informed violators of Referendum Bill 25 "would be guilty of misdemeanors"). Voters were asked to compare and choose between the two competing measures in the 1972 election. By choosing I-276 over Referendum Bill 25, voters expressed specific intent to enact a comprehensive campaign finance law that provided exclusively for civil penalties.
¶ 60 Accordingly, I dissent.
WE CONCUR: TOM CHAMBERS, and CHARLES W. JOHNSON, JJ.
NOTES
[1] RCW 9A.28.040(1) provides that "[a] person is guilty of criminal conspiracy when, with intent that conduct constituting a crime be performed, he or she agrees with one or more persons to engage in or cause the performance of such conduct, and any one of them takes a substantial step in pursuance of such agreement."
[2] RCW 9A.08.020(1) provides that "[a] person is guilty of a crime if it is committed by the conduct of another person for which he is legally accountable." RCW 9A.08.020(2)(a) provides that "[a] person is legally accountable for the conduct of another person when . . . [a]cting with the kind of culpability that is sufficient for the commission of the crime, he causes an innocent or irresponsible person to engage in such conduct."
[3] State v. Knapstad, 107 Wash.2d 346, 729 P.2d 48 (1986).
[4] Laws of 2003, ch. 53, § 216, effective July 1, 2004, inserted: "is guilty of a class C felony and."
[5] Some of the trial court's reasoning seems couched in language relating to preemption of one statute by another, while other parts of the court's explanation show the basis of the decision being the application of the "general-specific rule." While each of these theories has specific application in specific circumstances, here we are concerned with whether enactment of chapter 42.17 RCW, and in particular RCW 42.17.390 and .400, bar prosecution under RCW 40.16.030 where the conduct at issue involves filing false campaign contribution reports. The chief dispute is whether the "general-specific" rule applies. We note that some cases refer to application of the "general-specific" rule as involving repeal of the general statute by the specific or special statute.
[6] The defendants point out that if a violation of chapter 42.17 RCW is intentional, penalties may be trebled. RCW 42.17.400(5). Therefore, they contend, the act includes a mens rea requirement. However, this does not mean that all violations of chapter 42.17 RCW would necessarily occur with a "knowingly" mental element, and thus it does not undercut the conclusion that the two statutes are not concurrent.
[1] Furthermore, RCW 42.17.400(5) states, "[i]f the violation is found to have been intentional, the amount of the judgment . . . may be trebled as punitive damages." Such a clause provides the extent of punitive sanctions available to the State and does not suggest the State may seek further punitive measures in other criminal statutes.